# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
GALLUP, ZOLPER, and MAGGS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant TODD R. MARCHESANO**
**United States Army, Appellant**

ARMY 20060388

21st Theater Support Command
Denise Lind and James L. Pohl, Military Judges
Colonel Scott W. Arnold, Staff Judge Advocate

For Appellant:  Mr. William E. Cassara, Esquire (argued); Captain Sean F. Mangan, JA; Mr. William E. Cassara, Esquire (on brief).

For Appellee:  Captain Adam S. Kazin, JA (argued); Colonel John W. Miller II, JA; Major Elizabeth G. Marotta, JA; Captain Todd Kutchenthal, JA; Captain Adam S. Kazin, JA (on brief).

2 October 2008

------------------------------------
OPINION OF THE COURT
------------------------------------

ZOLPER, Senior Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his plea, of indecent acts with a child, in violation of Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934.  The panel sentenced appellant to a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to Private E1.

Appellant asserts four assignments of error; none merit relief, but one merits discussion.  Appellant, in pertinent part, claims his "conviction must be set aside because the military judge abused her discretion by admitting uncharged misconduct evidence purportedly showing that appellant sexually molested his daughter as Military Rule of Evidence [hereinafter Mil. R. Evid.] 414 propensity evidence to prove [the] charged indecent acts offense."[1]

---

[1] The Mil. R. Evid. 414 evidence was admitted through two hearsay statements offered under Mil R. Evid. 807 and 803(4).  Additionally, the military judge determined appellant forfeited his right to confront the witness by acquiescing in wrongdoing to procure her unavailability under Mil. R. Evid. 804(b)(6).

This case is a matter of first impression for this court in applying Mil. R. Evid. 804(b)(6), the "forfeiture by wrongdoing" exception to the hearsay rule. It has particular application in light of the Supreme Court's recent decision in *United States v. Giles*, 554 U.S. __, 128 S. Ct. 2678 (2008), wherein the Court addressed the forfeiture by wrongdoing exception to the Confrontation Clause. In our analysis of Mil. R. Evid. 804(b)(6), we answer three questions: (1) How should this court interpret the phrase "acquiesced in wrongdoing" as described in Mil. R. Evid. 804(b)(6) given the Supreme Court's recent decision; (2) Can the actions of another in causing the unavailability of a witness under Mil. R. Evid. 804(b)(6) be imputed to the accused; and (3) Under Mil. R. Evid. 804(b)(6), must the military judge find an *accused intended* to cause the unavailability of the witness?

We first review the general application and specific admissibility of hearsay statements under the forfeiture by wrongdoing provision of Mil. R. Evid. 804(b)(6) and hold that forfeiture by wrongdoing was not satisfied.[2] We next consider PM's (appellant's daughter) statements under the applicable evidentiary hearsay rules (Mil. R. Evid. 807 and 803(4)) before analyzing their admissibility under Mil. R. Evid. 414.[3] Under the facts of this case, we hold the military judge erroneously admitted PM's hearsay statements to a friend under Mil. R. Evid. 807. However, we find the error in admitting these statements did not materially prejudice appellant's substantial rights under Article 59(a), UCMJ. We find the military judge properly admitted PM's statements to a doctor under Mil. R. Evid. 803(4) and 414.

## FACTS

### *Background*

Appellant was convicted of committing an indecent act on AK, the seven-

---

[2] A proper finding of forfeiture by wrongdoing may "extinguish[]" constitutional and evidentiary hearsay challenges. *Crawford v. Washington*, 541 U.S. 36, 62 (2004).

[3] The federal circuits have used this method when analyzing the related issue of hearsay evidence admitted under Fed. R. Evid. 404(b). *See United States v. Oberle*, 136 F.3d 1414, 1418 (10th Cir. 1998) ("Although the statements are party admissions under [Fed. R. Evid.] 801(d) and thus not hearsay, they must nevertheless also be analyzed for admissibility under Rule 404(b) because they reveal or suggest prior criminal conduct."); *United States v. Godinez*, 110 F.3d 448, 454-55 (7th Cir. 1997) (analyzing first whether statement constituted inadmissible hearsay, then whether [Fed. R. Evid.] 404(b) precluded its admission); *United States v. Micke*, 859 F.2d 473, 478-79 (7th Cir. 1988) (recognizing that testimony recounting defendant's statement qualified as party admission and was not hearsay, but stating that "does not end our inquiry" before analyzing whether statement was admissible under Fed. R. Evid. 404(b)).

year-old friend of appellant's daughter, PM.[4]  At trial, AK testified that she spent the night, on 27 May 2005, at appellant's house.  AK set up a tent in appellant's backyard with PM, where the children played and eventually fell asleep. AK testified that sometime during the night, appellant started to touch her in the area between her navel and vaginal area and on her lower back, just above the buttocks.  Appellant's touching consisted of moving his hand smoothly along her body in a soft, back and forth fashion.

After appellant touched her for a few seconds, AK rolled over on her side.  Appellant then took AK out of the tent and made her promise not to tell anyone he touched her.  She agreed not to tell anyone, and then she went into the house with appellant where she slept on the couch.  The next morning, AK told PM that appellant touched her during the night.  PM then said, "he touches [me] too . . . that when he does that, it means that he's going to do something."

Later that weekend, PM's mother, made aware of AK's and PM's comments, brought PM to the Landstuhl Hospital Emergency Room for examination and treatment of possible child sexual abuse.  At the hospital, an Army medical doctor, Major Mark Rieker (Dr. Rieker), conducted a physical examination of PM.  After the physical examination, Dr. Rieker began questioning PM about the incident.  PM told Dr. Rieker that appellant sometimes touched her private area when taking her out of the bath and drying her off.  This touching sometimes lasted for more than a second and it felt unusual.

Prior to the panel being seated, the government discovered PM was not available to testify at trial.  At the government's request a German subpoena was issued to have PM appear, but her mother, Ms. Marchesano, refused to bring her to court.  Ms. Marchesano consulted a German attorney, Ms. Linn, who testified the German subpoena could not be enforced against a family member to testify against a parent.  Appellant had joint custody of his daughter, but claimed his defense counsel advised him not to get involved with the production of his daughter at trial.

### *Pretrial Motions*

In an Article 39(a), UCMJ, session the military judge heard testimony regarding PM's proposed hearsay testimony and litigated its admissibility.  The military judge allowed PM's statements to AK and Dr. Rieker, over defense objection on Sixth Amendment, evidentiary hearsay, Mil. R. Evid. 414, and Mil. R. Evid. 403 grounds.  The military judge made initial factual findings.

In relation to PM's statements to AK, the military judge ruled:

---

[4]  The panel found appellant guilty of the charged offense of indecent acts with a child with excepted and substituted language:  "except the words:  caressing, buttocks, pelvic, and vaginal area, substituting therefor the words:  back part, rubbing, front part below the navel above the knee."

3

One, [PM] has been subpoenaed to testify through the German government. . . . [PM] is not here. The government has exercised due diligence in attempting to secure the presence of [PM] and has been unable to secure [her] presence through process or by other reasonable means. [PM] is unavailable.

Two, the statements are not testimonial . . . . They were made by one 7-year child to another after a sleepover. There was no questioning by [AK] to elicit information. This scenario is not the functional equivalent of testimony under oath, such as an affidavit, custodial examination, deposition, confession, or prior testimony; thus the determination that must be made is whether the statements by [PM] to [AK] qualify under the residual hearsay rules, particularly, Military Rule of Evidence 807, residual hearsay. . . .

Three, the hearsay statements by [PM] were offered as evidence of two material facts. First, as evidence of a reason [AK] did not tell [her mother] that the accused touched her on 25 May[] 2005; and second, as evidence of similar crimes in child molestation cases under Military Rule of Evidence 414.

Four, because [PM] is unavailable to testify, these statements to [AK] are more probative on both points than any other evidence the government can procure through reasonable means.

Five, the statements have equivalent circumstantial guarantees of trustworthiness to express hearsay statements made in Military Rule of Evidence 803 and 804, based on the following: the statements were made by one 7-year-old child to another of similar age; they were spontaneously uttered in response to a remark by AK that she doesn't like [PM's] daddy, or the way he touches her, or words to that effect; there is no evidence of a motive for [PM] to lie, although, the girls don't specify what type of touching they're discussing, it can be inferred from the tenor of the conversation and the lack of questioning by [PM] that she understood the kind of touching [AK] was referring to; there is no evidence of abnormal mental state of [PM] . . . .

4

In relation to PM's statements to Dr. Rieker, the military judge ruled, in pertinent part:

> Ms. Marchesano brought [PM] to the Landstuhl Emergency Room . . . for a medical examination after the allegations concerning [AK] were made known. He advised [PM] that he was a doctor or pediatrician and that he needed to ask her some questions and conduct an examination. When . . . Dr. Rieker questioned [PM], Mrs. Marchesano was also in the room. Dr. Rieker conducted a physical examination and found no signs of abuse. Dr. Rieker asked [PM] about her private areas and whether she had any secrets, and also asked if the accused had touched her. . . .
>
> Two, although Dr. Rieker asked [PM] direct questions about whether the accused had touched her, the court[] finds that the statements were not testimonial . . . . [PM] was 7 years old at the time of the examination. Dr. Rieker told her he was conducting an examination of her at the time. [PM]'s responses were not focused, not factual assertions that one would expect with testimonial communications. [PM] was not telling a story or version of events, but responding and pulling back to questions about touching. The court finds that this is not the functional equivalent of testimony under oath, such as an affidavit, custodial examination, deposition, or prior testimony.
>
> [T]he inquiry is whether [PM]'s statements fall within [Mil. R. Evid.] 803(4), a firmly rooted hearsay exception. The court finds that they do. [PM] knew that she was in the hospital Emergency Room being physically examined and questioned by the doctor. Her statements to Dr. Rieker describe the medical history and concern to the general nature of the cause that are reasonably pertinent to diagnosis and treatment. For the reasons outlined above, the court finds that the statements to Dr. Rieker are evidence of similar crimes in child molestation under [Mil. R. Evid.] 414.

The military judge further addressed the admissibility of PM's statements to AK and Dr. Rieker under Mil. R. Evid. 414:

> Now, as far as the purpose of being introduced under [Mil. R. Evid.] 414, [*United States v. Wright*, 53 M.J. 476

(C.A.A.F. 2000)], provides the analytical framework for evaluating the admissibility of evidence under . . . [Mil. R. Evid.] 414. . . . After considering the [*Wright*] factors, the evidence presented by the parties, and the arguments of counsel, the court finds by a preponderance of the evidence and concludes the following:

One, the government provided the defense the required advanced notice . . .;

Two, the accused is charged with one specification of indecent acts with a child, [AK], occurring on or about 27 May, 2005;

Three, the proffered, uncharged evidence is evidence of the accused's commission of similar indecent acts of sexual touching at about the same timeframe as against his daughter, [PM], who is approximately the same age as [AK]. Both the charged offense and the uncharged evidence involve acts allegedly occurring on the accused's property.

Four, [Mil. R. Evid.] 414(a) unambiguously provides that at a court-martial in which the accused is charged with an offense of child molestation, evidence of the commission of one or more offenses of child molestation is admissible and may be considered for any bearing—for [its] bearing on any matter which is relevant;

Five, the proffered evidence is admissible under [Mil. R. Evid.] 401 and 402 because it's logically relevant to show the accused has a propensity to commit the charged indecent acts and to engage in nonconsensual sexual conduct with girls, approximately 7 years old in his home.[5]

Finally, the military judge notified counsel she would revisit the issue of forfeiture by wrongdoing once she heard from the other witnesses. During a

---

[5] In addition, the military judge conducted a Mil. R. Evid. 403 balancing test and found the "probative value [of the evidence] substantially outweighed [] the danger of unfair prejudice, confusion of the issues, misleading the members, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." *See United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (applying a Mil. R. Evid. 403 balancing test to evidence considered under Mil. R. Evid. 413).

subsequent Article 39(a), UCMJ, session, the military judge made the following findings of fact and law:

> All right.  Finally, we tabled yesterday the issue of whether the hearsay statements of [PM] to [AK] on or about 28 May 2005 and the hearsay statements of [PM] to Dr. Mark Rieker on or about 30 May 2005 were admissible under . . . 804(6) as forfeiture by wrongdoing.
>
> . . .
>
> The court makes the following factual findings with respect to whether these hearsay statements are admissible under 804(b)(6):
>
> One, [PM] is [at trial eight] years old.  She is the daughter of the accused . . . and Ms. Joy Marchesano.  She is in Germany as a military dependant and lives off-post on the German economy with both parents.
>
> Two, the government requested the German authorities issue a subpoena for [PM] to be present for trial on 2 and 3 May 2006.  The subpoena was served on Ms. [] Marchesano prior to trial.  Ms. Marchesano was aware of the subpoena and showed the subpoena to Ms. Sabrina Linn, an attorney who represents Ms. Marchesano and [PM].  Ms. Linn does not represent the accused.
>
> Three, Ms. Marchesano told Ms. Linn and this court that she does not consent to [PM] testifying in court.  She was evasive about the whereabouts of [PM].  Her testimony was that [PM] is staying with a friend of Ms. Marchesano and the accused, yet Ms. Marchesano does not know where this friend lives[.]  [This] is not credible and evidence of Ms. Marchesano's continued refusal to honor the subpoena and produce [PM] for trial[.]
>
> Four, Ms. Linn testified and evidenced a hostile demeanor towards the court.  Ms. Linn testified that under German law family members are not required to testify against other family members. The court makes no findings with respect to German law; however, the court does find there is no parent/child privilege under the Military Rules of Evidence. . . .

7

Five, Ms. Linn refused to answer the question of the court whether German law allows a parent to disregard a subpoena and not produce the child for trial. The court finds that Ms. Linn, Ms. Marchesano, and the accused were aware that [PM] had been subpoenaed for trial and that German law requires that the subpoena be honored and that neither Ms. Marchesano nor the accused produced [PM] for trial.

Six, both the accused and Ms. Marchesano are the custodial parents of [PM] and both exercise parental control. Both were home on the evening of 1 May 2006 with [PM]. The accused left the decision whether to produce [PM] for trial with Ms. Marchesano and made no attempt to influence her decision.

Seven, the accused was aware as of 1 May 2006 that the court was considering admitting hearsay statements of [PM] under Military Rule of Evidence 804(b)(6) as forfeiture by wrongdoing. He was aware that [PM] had been subpoenaed for trial. The accused did not produce [PM] for trial on 2 May or 3 May 2006, despite the fact that he had access to [PM] as [her] father—as her father in the same house, nor did he make any attempt to persuade Ms. Marchesano to honor the subpoena. The court finds that by this conduct, the accused engaged in wrongdoing that was intended to, and did produce the unavailability of [PM] as a witness.

Eight, the court further finds that Ms. Marchesano with the full acquiescence of the accused engaged in wrongdoing by violating the subpoena from the German authorities in failing to produce [PM] for trial. The court further finds that by this wrongdoing both the accused and Ms. Marchesano intended to and did procure the unavailability of [PM] as a witness.

Nine, the intent of the accused to procure the unavailability of [PM] as a witness is corroborated by the accused's refusal to give [his company commander] contact information for [PM] and [her mother] and his statement that he did not want her to contact them. The statements- - hearsay statements by [PM] to [AK] and Dr. Mark Rieker are admissible under Military Rule of Evidence 804(b)(6).

## LAW and DISCUSSION

### *Standard of Review*

This Court reviews evidentiary rulings on hearsay for an abuse of discretion. *United States v. Czachorowski*, 66 M.J. 433, 434 (C.A.A.F. 2008) (citing *United States v. Dewrell*, 55 M.J. 131, 137 (C.A.A.F. 2001)).  Findings of fact are affirmed unless they are clearly erroneous; conclusions of law are reviewed de novo. *Id.* (citing *United States v. Rader,* 65 M.J. 30, 32 (C.A.A.F. 2007)).  Whether a statement constitutes testimonial hearsay is a legal question we review de novo. *United States v. Rankin*, 64 M.J. 348, 351 (C.A.A.F. 2007).

### *Mil. R. Evid. 804(b)(6)*

#### <u>Law</u>

In *Giles*, the Supreme Court held the forfeiture by wrongdoing exception to the Confrontation Clause applies only where the defendant acted with the intent of making the witness unavailable to testify at trial.  554 U.S. __, 128 S. Ct. at 2686-88.[6]  In that case, the defendant was charged with murdering his girlfriend.  Approximately three weeks prior to the murder, the victim told the police the defendant had threatened to kill her.  Over objection, the trial court allowed this statement into evidence, holding appellant forfeited his right to confront the witness.  The Court disagreed, holding the trial judge failed to make a finding that appellant committed the murder with the intent to make the witness unavailable. *Giles*, 554 U.S. __, 128 S. Ct. at 2692.[7]

---

[6]  The Sixth Amendment allows admission of a witness's out-of-court testimonial statements against a criminal defendant if the witness is present at trial for cross-examination. *See Crawford*, 541 U.S. at 68.  If the witness is unavailable, the testimonial statements are admissible only if the defendant had a prior opportunity to cross-examine. *Id.*  The Court interpreted the Sixth Amendment as referring to the right of confrontation as "admitting only those exceptions established at the time of the founding." *See Giles*, 554 U.S. __, 128 S. Ct. at 2682 (quoting *Crawford*, 541 U.S. at 54).  The Court recognized two historical exceptions to the right of confrontation:  dying declarations and forfeiture by wrongdoing. *Giles*, 554 U.S. __, 128 S. Ct. at 2682-2683.

[7] Prior to *Giles*, the Supreme Court addressed the concept of "forfeiture by wrongdoing" in *Reynolds v. United States*, 98 U.S. 145 (1878).  In *Reynolds*, the defendant was charged with bigamy and refused to divulge the whereabouts of his second wife, thus interfering with the prosecutor's attempt to subpoena her for a trial.  Over objection, the trial court allowed her previous testimony into evidence. The Court affirmed the conviction holding the defendant forfeited his confrontation rights since he was responsible for her absence. *See id.* at 158–161.

In reaching this conclusion the Supreme Court refined the common law principle of "forfeiture by wrongdoing," stating it applied only where the defendant's conduct was "designed" to prevent testimony. *Giles*, 554 U.S. __, 128 S. Ct. at 2683. The defendant, therefore, must have "intended" to prevent testimony before applying the "forfeiture by wrongdoing" principle in order to admit statements without confrontation. *Giles*, 554 U.S. __, 128 S. Ct. at 2686. Although the Court did not specify a particular procedure for determining whether the principle applies, in dicta, the Court appeared to cite with approval the practice of requiring an evidentiary hearing before admitting a witness' statement over the objection of an accused. *Giles*, 554 U.S. __, 128 S. Ct. at 2691 n.6.

The common law doctrine of forfeiture by wrongdoing as addressed by the Supreme Court in *Giles* was previously codified in Fed. R. Evid. 804(b)(6) and promulgated in Mil. R. Evid. 804(b)(6). *See Davis v. Washington*, 547 U.S. 813, 833 (2006) (The evidentiary hearsay rule simply "codifie[d] the forfeiture doctrine."). Although in many respects the holding in *Crawford* has functionally separated the constitutional and evidentiary hearsay concepts, the Court's analysis of the Confrontation Clause forfeiture by wrongdoing and Fed. R. Evid. 804(b)(6) indicated the two are related. *See Giles*, 554 U.S. __, 128 S. Ct. at 2686 ("No case or treatise that we have found, however, suggested that a defendant who committed wrongdoing forfeited his confrontation rights but not his hearsay rights.").

Both Military Rule of Evidence 804(b)(6) and its federal counterpart are broadly written: "A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Although there is no discussion of this rule in the *Manual for Courts-Martial* [hereinafter *MCM*], the advisory committee for Fed. R. Evid. 804(b)(6) noted the rule was instituted as a "prophylactic rule to deal with abhorrent behavior which strikes at the heart of the system of justice." *Cf. MCM,* United States, Analysis of the Rules for Courts-Martial app. 22, at A22-59 (2005 ed.) ("[M]ilitary evidentiary law should echo the civilian federal law to the extent practicable."). Similarly, the constitutional principle of forfeiture by wrongdoing is an equitable doctrine based on the principle that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis,* 547 U.S. at 833.

Though not an issue before the Supreme Court in *Giles*, Mil. R. Evid. 804(b)(6) and Fed. R. Evid. 804(b)(6) contain language not present in the common law principle of forfeiture by wrongdoing, particularly the phrase "acquiesced in wrongdoing." *See Giles*, 554 U.S. __, 128 S. Ct. at 2683 ("[P]rocure" can also mean "a defendant forfeits confrontation rights when he uses an intermediary for the purpose of making a witness absent."). While not defined under Mil. R. Evid. 804(b)(6), to "acquiesce" is otherwise defined as "to accept tacitly or passively; to give implied consent to an act." Black's Law Dictionary 24 (8th ed. 2004); *see also* Webster's Unabridged Dictionary 18 (2nd ed. 2001) ("[T]he act or condition of acquiescing or giving tacit assent; agreement or consent by silence or without

objection.").  In other words, "[a]ctive participation or engagement . . . is not required."  *See United States v. Rivera*, 412 F.3d 562, 567 (4th Cir. 2005).

While military courts have not interpreted Rule 804(b)(6), the federal circuits have addressed this rule.  Most recently, the Fourth Circuit, in affirming a defendant's conviction for murder and conspiracy, upheld a ruling that admitted, under Fed. R. Evid. 804(b)(6), a deceased declarant's statement relating the defendant's boast of committing the murder.  *See Rivera*, 412 F.3d at 567.  The court rejected the defendant's argument he could not be responsible for the killing of a witness which occurred while he was incarcerated, since "a defendant need only tacitly assent to wrongdoing in order to trigger the Rule's applicability."  *Id*.; *see also United States v. Thompson*, 286 F.3d 950, 963-64 (7th Cir. 2002) (imputing co-conspirators actions to defendant for purposes of Rule 804(b)(6)); *United States v. Mastrangelo*, 693 F.2d 269, 273-74 (2d Cir. 1982) ("Bare knowledge of a plot to kill the victim and a failure to give warning to appropriate authorities is sufficient to constitute a waiver."); *Olson v. Green*, 668 F.2d 421, 429 (8th Cir. 1982) (noting that someone acting on defendant's behalf to procure the unavailability of a witness can operate to waive a defendant's hearsay objection).

Similarly, the Seventh Circuit in *United States v. Scott*, 284 F.3d 758, 765 (7th Cir. 2002), affirmed a defendant's drug trafficking convictions, finding no error in the admission of grand jury testimony that had been given by a coconspirator who refused to testify at trial.  The court found the defendant's threats made through an intermediary while he and the witness were confined in the same jail were sufficient to constitute "acquiesc[ence]."

In *Scott*, the Seventh Circuit also had an opportunity to define the term "wrongdoing" under Fed. R. Evid. 804(b)(6).  284 F.3d at 763-64.  The court first observed that "wrongdoing" was not defined in Fed. R. Evid. 804(b)(6); however, the advisory committee for the Federal Rules of Evidence instructed "wrongdoing" need not consist of a criminal act.  *Cf. United States v. Reeves*, 61 M.J. 108, 110 (C.A.A.F. 2005) (A wrongful act is "one done without legal justification or with some sinister purpose." (citation omitted)).  The court then noted the term "wrongfully" included concepts such as witness intimidation, coercion, undue influence, and "threats of future retribution."  *Scott*, 284 F.3d at 763 (noting that "causing a person not to testify at trial cannot be considered the 'wrongdoing' itself, otherwise the word would be redundant"); *see also Steele v. Taylor,* 684 F.2d 1193, 1201 (6th Cir. 1982) (noting that wrongful conduct includes the use of force and threats and "persuasion and control" by a defendant).

### *Discussion*

We agree with the aforementioned federal circuits who have interpreted the forfeiture by wrongdoing principle and adopt a definition of the terms "acquiesce[]" and "wrongdoing" using their ordinary plain meaning.  *See Nix v. Heddon*, 149 U.S. 304, 306 (1893).  However, use of this principle still requires some "design" on the

part of appellant for the declarant to be deemed unavailable as a witness. *Giles*, 554 U.S. __, 128 S. Ct. at 2683. While a military judge may impute the wrongful actions of a third-party to appellant, there must still be a determination at trial that appellant intended the witness be absent through the wrongful act of another. Indeed, in *Giles* the Supreme Court stated, "[t]he terms used to define the scope of the forfeiture rule suggest that the exception applied only when the defendant engaged in conduct *designed* to prevent the witness from testifying." *Giles*, 554 U.S. __, 128 S. Ct. at 2684 (emphasis added). Finally, although not addressed by the military judge, we affirmatively hold preponderance of the evidence is the proper standard of proof at trial. *See United States v. Gray*, 405 F.3d 227, 241 (4th Cir. 2005); *Scott*, 284 F.3d at 762; *United States v. Houlihan,* 92 F.3d 1271, 1280 (1st Cir. 1996).[8]

Having defined the phrase "acquiesced in wrongdoing," the applicable intent component under Mil. R. Evid. 804(b)(6), and the proper burden of proof at trial, we need now determine if the military judge properly applied the rule in admitting PM's out of court statements. In situations where the government asserts an appellant "acquiesced in wrongdoing," we employ a modified form of the three-part test for evaluating Fed. R. Evid. 804(b)(6) set forth in *Scott,* 284 F.3d at 762, with the addition of another factor to take into account the holding in *Giles*: (1) the witness was unavailable through the actions of another; (2) the act of another was wrongful in procuring the unavailability of the witness; (3) the accused expressly or tacitly accepted the wrongful actions of another; and (4) the accused did so with the intent that the witness be unavailable. *See also Gray*, 405 F.3d at 243 (identifying a three-part test for evaluating Fed. R. Evid. 804(b)(6)).

In applying these factors, we find the military judge erred in considering whether Ms. Marchesano's conduct was wrongful, whether appellant's actions were sufficient to be considered tacit acceptance, and whether appellant had the intent to procure PM's unavailability. First, although we interpret the language "wrongdoing" and "acquiesce[]" broadly, the limited facts of this case do not sufficiently establish whether appellant's "tacit acceptance" of his wife's refusal to honor the subpoena for PM's appearance sufficiently demonstrated his "design" to have PM unavailable for trial. This is of particular significance here because appellant averred he simply removed himself from any involvement with the German subpoena because of his possible criminal liability. Indeed, part of the military judge's findings were that "[t]he accused left the decision whether to produce [PM] for trial with Ms. Marchesano and made no attempt to influence her decision."

---

[8] We note Mil. R. Evid. 804(b)(6) prescribes no procedural steps or hearings to determine if an accused forfeited his right to have the witness available. However, in light of *Giles* and consistent with some of the federal circuits, it is advisable for a military judge to hold an evidentiary hearing outside the presence of the panel and find by a preponderance of the evidence that the accused procured or acquiesced in making the witness unavailable. *See United States v. Dhina*, 243 F.3d 635 (2d Cir. 2001); *Mastrangelo*, 693 F.2d at 273.

We also find the record does not sufficiently demonstrate appellant's wife *wrongfully* procured the unavailability of PM. The record clearly establishes Ms. Marchesano refused to abide by the German subpoena as the custodial parent of PM. However, the government never rebutted Ms. Marchesano's contention that she refused to present PM because German law does not require a witness to testify against a family member. Indeed, Mrs. Linn, a German lawyer, testified at trial that German law does not require Ms. Marchesano to abide by the subpoena. Even though the government now presents some evidence on appeal that this was an incorrect interpretation of German law, we find the military judge's finding of fact that "German law requires that the subpoena be honored" clearly erroneous and unsupported by the evidence admitted at trial. In light of the record, it is possible appellant's wife merely did not wish for her young daughter to testify in court and sought competent legal advice to determine if such an action was appropriate. Accordingly, there is insufficient evidence of an illegal or nefarious purpose.

Finally, presuming Ms. Marchesano wrongfully procured the unavailability of PM, the prosecution failed to establish that appellant's wife acted on his behalf or appellant acquiesced his wife's decision not to produce the child as a witness. The government presented little evidence that appellant even tacitly accepted Ms. Marchesano's actions. Instead, the record suggests appellant completely removed himself from the situation and permitted Ms. Marchesano to decide whether to abide by the subpoena. We find there is a distinction between tacit acceptance and total avoidance prior to commission of the wrongful act. Therefore, there is insufficient factual basis to determine that appellant *acquiesced* in procuring the unavailability of PM.

As *Giles* held, a criminal defendant cannot waive the right to confront a witness through participation in the commission of the crime itself unless he possessed an intent to procure the unavailability for trial. 554 U.S. __, 128 S. Ct. at 2692. Similarly, a military judge must make an affirmative determination that an accused had the intent to have a witness unavailable and that the third party's actions were wrongful to satisfy the evidentiary requirements of Mil. R. Evid. 804(b)(6). Under the facts of this case, we find the military judge abused her discretion in finding appellant forfeited his right to have PM present.

### *Mil. R. Evid. 807*

*Law*

Since we find appellant did not forfeit his evidentiary and constitutional right to confront a witness, we must now analyze whether the hearsay statements of PM were properly admitted at trial. In general, an out-of-court statement made by someone other than the testifying declarant offered in evidence to prove the truth of the matter asserted is hearsay and is not admissible unless an exception applies. *See* Mil. R. Evid. 801(d) and 802. The residual hearsay exception at Mil. R. Evid. 807 is one such exception. *Czachorowski*, 66 M.J. at 434. The rule states:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Mil R. Evid. 807.[9]

Our superior court has established certain non-dispositive factors to determine if there are sufficient circumstantial guarantees of trustworthiness. "These [factors] may include, among other things:  "(1) the mental state of the declarant; (2) the spontaneity of the statement; (3) the use of suggestive questioning; and (4) whether the statement can be corroborated." *United States v. Donaldson*, 58 M.J. 477, 488 (C.A.A.F. 2003) (quoting *United States v. Grant*, 42 M.J. 340, 343-44 (C.A.A.F. 1995)).[10]

### *Discussion*

Under the totality of the circumstances, we find PM's statements to AK do not carry "equivalent circumstantial guarantees of trustworthiness." *Czachorowski*, 66 M.J. at 435.  Foremost, while the military judge held PM's statements were spontaneous, in fact, they were made in response to AK's complaint of improper touching and, therefore, were not completely unprompted.  Second, PM's statements to AK—"daddy did it to me too" and "when he does that, it means that he's going to do something"—were too indistinct and vague to be trustworthy.  The statements provided no time, place, context, or even direct declaration of what appellant was alleged to have done.  Indeed, during the Article 39(a), UCMJ, session it was evident the government was uncertain about the precise language and vernacular of the statements.  *See United States v. Pablo*, 53 M.J. 356, 362 (C.A.A.F. 2000) ("When young children, more than other victims, complain of abuse, there is a greater need for evidence that either corroborates or negates the victim's version of

---

[9]  *See generally Czachorowski*, 66 M.J. at 434 n.3 (citing *Whorton v. Bockting,* 549 U.S. 406 (2007)) ("Regardless of whether the evidence at issue is testimonial in nature, admission at trial still depends on compliance with the rules of evidence.").

[10] The Supreme Court identified the following factors for determining trustworthiness in cases involving child witnesses prior to *Crawford*:  (1) spontaneity and consistent repetition of the statement; (2) mental state of the declarant; (3) use of terminology expected of a child witness; and (4) lack of motive to fabricate.  *Idaho v. Wright*, 497 U.S. 805, 821 (1990).

the abuse. Child victims are easily attacked and often easily confused with peripheral details.").

Finally, as the military judge noted, PM's statements were ultimately introduced through the "complaining witness [AK]." While we have no reason to doubt the truthfulness of AK, ultimately the veracity of an alleged victim is of paramount importance at a criminal proceeding. We are unconvinced by the military judge's finding that a complaining witness would have no reason to lie. Under the facts of this case, we find the potential motivation of the testifying witness is a relevant factor for consideration of Mil. R. Evid. 807.

The legislative history of the residual hearsay exception indicates that the exception should be used "very rarely, and only in exceptional circumstances." *United States v. Kelley*, 45 M.J. 275, 280 (C.A.A.F. 1996) (quotation marks and citations omitted); *see also Czachorowski*, 66 M.J. at 435 n.6. In this case, the military judge erred in admitting the hearsay statements because they lacked sufficient "circumstantial guarantees of trustworthiness." *Id*. We hold that the military judge abused her discretion in admitting PM's testimony under the residual exception to the hearsay rule.[11]

### *Mil. R. Evid. 803(4)*

#### *Law*

Under Mil. R. Evid. 803(4), certain hearsay statements made to medical personnel are admissible even if the witness is otherwise available. *See United States v. Rodriguez-Rivera*, 63 M.J. 372, 381 (C.A.A.F. 2006) (hearsay testimony of child victim through a doctor was properly admitted at trial under Mil. R. Evid. 803(4) even though the interview was initiated by the trial counsel). Such statements include: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Mil. R. Evid. 803(4); *see also United States v. Cucuzzella*, 66 M.J. 57, 62 (C.A.A.F. 2008) (statements made to a nurse and social worker were properly admitted under Mil. R. Evid 803(4)).

To qualify for this hearsay exception, two conditions must be met: "first, the statement must be made for purposes of medical diagnosis or treatment; and second,

---

[11] We agree, however, with the military judge that PM's statements to AK were not testimonial: "[It was] made by one 7-year child to another after a sleepover. There was no questioning by [AK] to elicit information. This scenario is not the functional equivalent of testimony under oath, such as an affidavit, custodial examination, deposition, confession, or prior testimony."

the patient must make the statement with some expectation of receiving medical benefit from the medical diagnosis or treatment that is being sought." *United States v. Williamson*, 26 M.J. 115, 118 (C.M.A. 1988) (quotation marks and citation omitted).[12] Cases of child sexual abuse have presented particular challenges to our courts when analyzing the expectations of very young children. While our superior court has acknowledged there may be some relaxation of the required proof to establish admissibility where a child is being treated, the mere fact a child is involved does not eliminate the need to meet both prongs. *See United States v. Faciane*, 40 M.J. 399, 403 (C.M.A. 1994)) ("[E]ven when children are involved, 'the facts and circumstances must support a finding that both prongs of the test are met.'" (quoting *Williamson*, 26 M.J. at 118)).

### *Discussion*

In this case, the military judge did not abuse her discretion in finding PM's statements to Dr. Rieker were made for the purpose of medical diagnosis. *See Kelley*, 45 M.J. at 280. There is ample evidence that PM understood Dr. Rieker was a doctor and the examination was for the purpose of receiving medical treatment. Although Dr. Rieker was dressed in civilian clothing during his interview with PM, he did explain to PM that he was a doctor and his questioning was part of a medical examination. Indeed, Dr. Rieker testified, "The most important thing that I do is evaluate the patient's medical health and to determine the patient's safety and if there are any medical problems that have come about because of what [] happened."

In the context presented it is also apparent PM understood she was to receive medical treatment. PM was brought to the Landstuhl Emergency Room by her mother where she was told a doctor would conduct a medical examination. Doctor Rieker proceeded to ask PM questions about her medical history and performed a physical examination, which is consistent with how a normal medical examination would be conducted. *See United States v. Hollis*, 57 M.J. 74, 79-81 (C.A.A.F. 2002) (In conducting an analysis of a child-victim's expectation when receiving medical treatment, courts can look beyond the testimony of the child and consider the testimony of the treating care provider and others who explained the purpose of the meeting with the provider).

Based upon the totality of the evidence, we do not find the military judge abused her discretion in ruling on this issue and the declarant would have believed

---

[12] "The rationale for Mil. R. Evid. 803(4) is the self-interested motivation to speak the truth to a treating physician or an individual in the mental health field in order to receive proper care and the necessity of the statement for a diagnosis or treatment." *United States v. Quigley*, 35 M.J. 345, 347 (C.M.A. 1992). "[A]n individual seeking relief from a medical problem has incentive to make accurate statements." *MCM*, United States, Analysis of the Rules for Courts-Martial app. 22, at A22-53 (2005 ed.).

she was there for medical treatment.[13] PM's statements to Dr. Rieker were properly admitted under Mil. R. Evid. 803(4).

### *Mil. R. Evid. 414*

#### *Law*

While PM's statement to Dr. Rieker did not violate Mil. R. Evid. 803(4), we must also analyze its admissibility under Mil. R. Evid. 414. Military Rule of Evidence 414(a) provides that "[i]n a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant." Military Rules of Evidence 413 and 414 "are essentially the same in substance, the analysis for proper admission of evidence under either should be the same." *Dewrell*, 55 M.J. at 138 n.4.

Before admitting evidence of other sexual acts under Mil. R. Evid. 414, the military judge must make three threshold findings: (1) that the accused is charged with an act of child molestation as defined by Mil. R. Evid. 414(a); (2) that the proffered evidence is evidence of his commission of another offense of child molestation as defined by the Rule; and (3) the evidence is relevant under Military 401 and Military 402. *See United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000) (requiring certain threshold findings before admitting evidence under Mil. R. Evid. 413).

The military judge must also conduct a Mil. R. Evid. 403 balancing analysis, to which the following nonexhaustive list of factors is relevant: "[s]trength of proof of prior act -- conviction versus gossip; probative weight of evidence; potential for less prejudicial evidence; distraction of factfinder; and time needed for proof of prior conduct . . . temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties." *Wright*, 53 M.J. at 482 (citations omitted).

---

[13] Appellant does not assert on appeal the admission of PM's statement to Dr. Rieker violates his Sixth Amendment right to confrontation. We agree with the military judge at trial, PM's statements to Dr. Rieker were not made in response to any law enforcement or prosecutorial inquiry and the primary purpose was not to produce evidence with an "eye toward trial." As stated in our discussion of Mil. R. Evid. 803(4), no objective witness would reasonably believe PM's statements to Dr. Rieker were intended "to preserve past facts for a criminal trial" and instead were simply a medical examination to determine if there was a physical injury. *See United States v. Gardinier*, 65 M.J. 60, 63 (C.A.A.F. 2007). Accordingly, PM's statements to Dr. Rieker are nontestimonial.

*Discussion*

Under the *Wright* factors, we find the evidence of uncharged misconduct properly admitted under Mil. R. Evid. 414. There was evidence, in the form of testimony by Dr. Rieker, that appellant had committed the other acts of child molestation and there were no significant intervening circumstances between the charged and uncharged acts.[14] As the military judge ruled: "[the] proffered, uncharged evidence [was] evidence of the accused's commission of similar indecent acts of sexual touching at the same timeframe as against his daughter, [PM], who is approximately the same age as [AK]. Both the charged offense and the uncharged evidence involve acts allegedly occurring on the accused's property."

Military Rule of Evidence 414 reflects a presumption that other acts of child molestation constitute relevant evidence of predisposition to commit the charged offense. Similarly, in this case we find the evidence is relevant to demonstrate appellant's propensity to commit the charged offense of indecent acts with AK under Mil. R. Evid. 401, 402, and 414. The military judge clearly found that the probative value of PM's hearsay testimony outweighed any prejudicial effect, as required under Mil. R. Evid. 403. Therefore, PM's statements to Dr. Rieker were properly admitted under Mil. R. Evid. 414.

**Prejudice**

*Law*

Since the military judge abused her discretion by admitting PM's statements to AK into evidence in violation of Mil. R. Evid. 807, we must now determine whether appellant suffered any prejudice as a result of the inadmissible testimony. *See* Article 59(a), UCMJ. "Whether an error, constitutional or otherwise, was harmless, is a question of law that we review de novo. . . . For nonconstitutional errors, the Government must demonstrate that the error did not have a substantial influence on the findings." *United States v. Hall*, 66 M.J. 53 (C.A.A.F. 2008); *United States v. Walker,* 57 M.J. 174, 178 (C.A.A.F. 2002) (citing *Kotteakos v. United States,* 328 U.S. 750, 765 (1946)).

We analyze claims of prejudice from an evidentiary ruling by weighing four factors: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question. We apply the same four-pronged test for erroneous admission

---

[14] Although appellant was ultimately convicted of an offense other than an "act of child molestation" he was in fact charged with such an offense under Mil. R. Evid. 414(a). *See* footnote 3, *supra*; *see also United States v. Schroder*, 65 M.J. 49, 54 (C.A.A.F. 2007) (it is irrelevant that appellant was not convicted of an act of "child molestation," because he is charged with a qualifying act).

of government evidence as for erroneous exclusion of defense evidence." *United States v. Kerr,* 51 M.J. 401, 405 (C.A.A.F. 1999) (citations omitted).

*Discussion*

Applying the factors set forth in *Kerr*, we find the erroneously admitted evidence did not have a substantial influence on the finding of guilty. In addition, disregarding the improperly admitted evidence, we are convinced of appellant's guilt beyond a reasonable doubt. *See United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987).

Even without PM's statements to AK, the government's case was strong. AK, who was seven years old at the time of the offense, was able to articulate the location and extent to which appellant indecently touched her and there was no obvious reason for AK to make-up the allegation. AK immediately reported the alleged offense and her father, Captain (CPT) JK, verified the immediate reporting at trial. In addition to AK's testimony, the government presented the properly admitted Mil. R. Evid. 414 testimony of Dr. Rieker. Doctor Rieker testified appellant committed similar acts of sexual misconduct with his daughter, PM, in the same house.

In contrast, the defense case was markedly less substantial. The defense rested without presenting any evidence on the merits. They presented no witnesses, physical evidence, or character witnesses to rebut the testimony of AK. Moreover, the veracity, credibility, and recollection of the other government witnesses were not effectively rebutted.

As to the materiality and quality of the improperly admitted evidence, we conclude the prejudicial effect of PM's hearsay statement to AK was minimal. We find the importance of PM's statements to AK to be of little consequence, particularly considering the underlying conduct was introduced through the testimony of Dr. Rieker. PM's statement to AK was mentioned only once during the Government's case-in-chief and was not a focus of the trial counsel's argument during closing. The statement had no major significance in the prosecution of the case against appellant.

Finally, we note a limiting instruction given by the military judge precluded the members from considering this evidence on any issue other than appellant's propensity to engage in child molestation or "any matter to which it is relevant in relation to the charged offense." In addition, the military judge instructed the members "[could not] convict the accused merely because you believe the accused committed this [other sexual assault] offense or solely because you believe he has a propensity to engage in child molestation," and that the members "may not use [Mil. R. Evid. 414] evidence as a substitute for [a findings of guilty] . . . or to overcome a failure of proof in the government's case . . . ." *See United States v. Dacosta*, 63 M.J. 575, 583 (Army Ct. Crim. App. 2006); *see also* Dep't of the Army, Pamphlet

27-9, Legal Services, *Military Judges Benchbook* ch. 7, para. 7-13-1 (2005). We conclude, therefore, this error was harmless and had no substantial prejudicial impact on appellant's rights. *See* Article 59(a), UCMJ.

## CONCLUSION

In answering our three Mil. R. Evid. 804(b)(6) questions, we hold: (1) this court adopts a definition of the terms "acquiesce[]" and "wrongdoing" using their ordinary plain meaning; (2) courts can impute the actions of another to the accused in causing the unavailability of a witness; and (3) the military judge must find an *accused intended* to cause the unavailability of the witness and we provide a four-part test for this determination. On consideration of the entire record, including the assignments of error and matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the findings of guilty and the sentence are affirmed.

Senior Judge GALLUP and Judge MAGGS[*] concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[*] Judge Maggs took final action on this case prior to his permanent change of duty station.