*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEPHENS, and STEWART
Appellate Military Judges

_____

**UNITED STATES**
Appellant

**v.**

**Craig R. BECKER**
Lieutenant (O-3), U.S. Navy
Appellee

**No. 201900342**

Decided: 24 July 2020

Appeal by the United States Pursuant to Article 62, UCMJ

Military Judge:
Aaron C. Rugh

Arraignment 13 February 2019 before a general court-martial convened at Naval Base San Diego, California, consisting of officer members.

For Appellant:
*Major Kerry E. Friedewald, USMC*
*Lieutenant Commander Timothy C. Ceder, JAGC, USN*

For Appellee:
*Lieutenant Daniel O. Moore, JAGC, USN*
*Captain Marcus N. Fulton, JAGC, USN*

_____

**PUBLISHED OPINION OF THE COURT**

_____

PER CURIAM:

This case is before us on an interlocutory appeal pursuant to Article 62(a)(1)(B), Uniform Code of Military Justice [UCMJ]. Appellee is charged with premeditated murder, assault consummated by battery, and conduct unbecoming an officer and a gentleman in violation of Articles 118, 128, and 133, UCMJ, 10 U.S.C. §§ 918, 928, 933 (2012), for allegedly abusing and then killing his wife. Upon referral of charges, the Government pursued the admission of prior statements by the decedent, Mrs. Becker, under the doctrine of forfeiture by wrongdoing. After two Article 39(a), UCMJ, hearings, the military judge ruled some of the statements inadmissible, which the Government now appeals. We find error in the judge's ruling and remand.

## I. BACKGROUND

The pending charges arise from the troubled relationship of Appellee and Mrs. Becker, whom Appellee allegedly murdered by pushing her from their apartment's seventh-story window in Mons, Belgium, in October 2015. Two years earlier, in August 2013, after learning of his wife's infidelity, Appellee allegedly threw her around their hotel room and strangled her. Mrs. Becker reported the alleged abuse to several individuals, including the desk clerk at the Army Lodge where they were staying and a military police officer who responded to the scene. Later that day, she made follow-up statements and a formal report to law enforcement. She alleged that in addition to physically assaulting her, Appellee had taken her identification and credit cards and changed their bank account passwords, effectively leaving her isolated and trapped.

That evening, after attending counseling with Appellee, Mrs. Becker recanted her allegations. She denied Appellee had taken her identification and credit cards and later formally recanted her report to law enforcement, explaining that Appellee had not strangled her and instead was trying to keep her from harming herself. She blamed her report on the effects of her medication. After Mrs. Becker's recantation, the criminal investigation stopped, and all further action on her allegations was formally closed in June 2014.

Despite her recantation to authorities, Mrs. Becker told a different story to friends and family members. She told them the allegations were true and that she had feared for her life during the assault, but that she recanted out of concern that they would negatively impact Appellee's career; she told one friend that she was afraid of what Appellee would do if he lost his career. She described how Appellee was controlling and manipulative and monitored her communications on her personal phone. She said he prevented her from contacting her friends and family while she was recovering from a surgery, and controlled who could visit her at their apartment in Belgium. She said he controlled how she could dress, prevented her from getting a tattoo, and destroyed her cosmetic products.

The discord within the Beckers' marriage culminated in their separation in the summer of 2015, after which Mrs. Becker decided to remain in Belgium, but live apart from Appellee. On the surface, the separation appeared amicable; the two intended to remain friends, to have regular interactions to raise their daughter, and to continue working in a joint business venture. But Appellee had a visceral reaction when he learned Mrs. Becker had a new boyfriend, with whom she worked, and she had begun spending nights at his home about a week before her death.

On the day Mrs. Becker died, she signed a lease and paid the deposit on an apartment of her own. That night, Appellee and Mrs. Becker had dinner at their seventh-floor apartment. Witnesses heard a scream around 2100 and saw Mrs. Becker fall from the seventh floor to the ground. The Government alleges Appellee put a sedative in her wine and pushed her out of a window. She survived the initial fall, but died later at a Belgian hospital.

## II. DISCUSSION

### A. The Military Judge's Ruling

In a pretrial motion, the Government sought a ruling that certain prior statements by Mrs. Becker relating to her alleged abuse were admissible under the doctrine of forfeiture by wrongdoing, an exception to both the Sixth Amendment Confrontation Clause and the hearsay rule. *Giles v. California*, 554 U.S. 353 (2008); Military Rule of Evidence [Mil. R. Evid.] 804(b)(6). Citing the doctrine's two-part test as set out in *United States v. Dhinsa*, 243 F.3d 635 (2nd Cir. 2001), the Government argued that a preponderance of the evidence supported that by pushing Mrs. Becker out of the window to her death, Appellee (1) was involved in, or responsible for procuring, her unavailability through knowledge, complicity, planning, or in any other way, and (2) acted with the intent of procuring her unavailability as an actual or potential witness. *See Dhinsa*, 243 F.3d at 653-54. The Government argued Appellee

killed Mrs. Becker with the intent, at least in part, of preventing her from repeating and expounding on her earlier abuse allegations, since it was reasonable to infer a person who recanted such allegations to save her spouse's career might again pursue them once their relationship was over.

In response, the Defense argued that any concern over Appellee's career or whether Mrs. Becker would revive her 2013 allegations was entirely speculative, particularly since their separation appeared to be proceeding amicably. The Defense argued that even if a revival of her earlier allegations could be expected, this fact, without more, did not weigh in favor of an inference that Appellee intended to silence Mrs. Becker as a witness because there were no pending charges against Appellee, no ongoing investigation, and no indication an investigation would be opened. Thus, it was not "reasonably foreseeable that [any] investigation would culminate in the bringing of charges."[1]

The military judge resolved the Government's motion in a written ruling with detailed findings of fact and conclusions of law. He cited the above two-prong test for forfeiture by wrongdoing and correctly found that with respect to the intent prong, "[i]n order to demonstrate the design to prevent [the witness from testifying], it is not necessary that criminal charges be pending."[2] He then adopted the principle cited by the Defense that for the wrongdoer to have the requisite intent, "it must be 'reasonably foreseeable that any investigation [would] culminate in the bringing of charges.'"[3] Using this legal standard, the military judge concluded that notwithstanding her continued complaints of abuse to friends and family, in light of Mrs. Becker's recantation of her 2013 allegations, the subsequent closing of all investigation and action relating to them as of June 2014, and her ostensibly amicable separation from Appellee, as of the day of her death:

> it was not reasonably foreseeable that the accused would be investigated as a result of any prior, formal or informal allegation made by Mrs. Becker. Further, the accused could not have reasonably foreseen that he might face charges based on those

---

[1] App. Ex. XIX at 3 (citing *United States v. Burgos-Montes*, 786 F.3d 92, 99 (1st Cir. 2015)).

[2] App. Ex. LXXIX at 6.

[3] App. Ex. LXXIX at 6 (quoting *United States v. Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996)).

allegations and that Mrs. Becker might be required to testify against him.[4]

From this, the military judge concluded the Government had failed to demonstrate that Appellee acted on the day of Mrs. Becker's death "in order to prevent Mrs. Becker's testimony."[5] Absent proof of such intent, he found that several of Mrs. Becker's prior statements relating to her alleged abuse were not admissible under forfeiture by wrongdoing.

## B. Jurisdiction and Standard of Review

We have statutory authority to hear this appeal under Article 62(a)(1)(B), UCMJ, which authorizes the Government to appeal an order or ruling "which excludes evidence that is substantial proof of a fact material to the proceeding." The evidence determined inadmissible by the military judge—Mrs. Becker's follow-up statements and formal report of abuse to law enforcement in August 2013, her statements to friends regarding the August 2013 incident, and her statements to friends and family members regarding Appellee's continuing conduct toward her between August 2013 and October 2015—meet that definition.[6]

In an Article 62 appeal, we review the military judge's decision "directly" and review the evidence "in the light most favorable to the party which prevailed at trial." *United States v. Henning*, 75 M.J. 187, 190-91 (C.A.A.F. 2016) (citation and internal quotation marks omitted). We review rulings to admit or exclude evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013); *United States v. Czachorowski*, 66 M.J. 432, 434 (C.A.A.F. 2008) (reviewing evidentiary rulings dealing with hearsay for an abuse of discretion). It is an abuse of discretion if the military judge: (1) "predicates his ruling on findings of fact that are not supported by the evidence"; (2) "uses incorrect legal principles"; (3) "applies correct legal principles to the facts in a way that is clearly unreasonable"; or (4) "fails to consider important facts." *United States v. Commisso,* 76 M.J. 315, 321 (C.A.A.F. 2017) (citing *United States v. Ellis,* 68 M.J. 341, 344 (C.A.A.F. 2010); *Solomon,* 72 M.J. at 180-81).

---

[4] App. Ex. LXXIX at 7.

[5] *Id.*

[6] Appellee is charged with assault consummated by a battery and conduct unbecoming an officer and a gentleman for the conduct Mrs. Becker alleged in these statements.

**C. Forfeiture by Wrongdoing**

The Sixth Amendment's Confrontation Clause holds that in all criminal prosecutions, the accused shall have the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This clause, with very few exceptions, serves as an ironclad bar to the admission of "testimonial" hearsay unless the declarant is unavailable to testify as a witness and the accused had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36 (2004).[7]

One of those exceptions, derived from common law, is the doctrine of forfeiture by wrongdoing, which provides that where an accused's wrongful actions prevent a witness from testifying, and where those actions were "designed" to prevent the witness from testifying, admission of out-of-court statements by that witness does not offend the Confrontation Clause. *Giles v. California*, 554 U.S. 353, 359 (2008). The rationale for this exception was provided as far back as 1878, when the Supreme Court explained:

> The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege.

*Reynolds v. United States*, 98 U.S. 145, 158 (1878). In other words, a criminal defendant is not permitted "to benefit from his own wrong," which would create "intolerable incentives." *Giles*, 554 U.S. at 365.

Forfeiture by wrongdoing is also an exception to the hearsay rule. Mil. R. Evid. 804(b)(6). As *Giles* suggests and courts have repeatedly held, the operation of the exception to the hearsay rule is substantially the same as the exception to the Confrontation Clause; where the evidence satisfies the exception to one, it will typically also satisfy the exception to the other.[8]

---

[7] While the Confrontation Clause is only implicated by statements deemed "testimonial," the Supreme Court has struggled to precisely define that term. *See Davis v. Washington*, 547 U.S. 813, 822 (2006). We focus our analysis here only on the content and application of the forfeiture-by-wrongdoing exception to the Confrontation Clause, not on whether the statements at issue are testimonial.

[8] *See Giles*, 554 U.S. at 365 ("No case or treatise that we have found . . . suggested that a defendant who committed wrongdoing forfeited his confrontation rights but not his hearsay rights."); *United States v. Emery*, 186 F.3d 921, 926 (8th Cir. 1999) (stating that where one's confrontation rights are waived, objections based on hearsay are similarly waived under Fed. R. Evid. 804(b)(6)); *United States v. Jack-*

Thus, our discussion of the exception applies equally to both sources of the doctrine.[9]

The forfeiture-by-wrongdoing exception has two components: (1) the party against whom the statement is offered wrongfully caused the declarant's unavailability as a witness; and (2) the party did so intending that result (i.e., his conduct was "designed" to prevent the witness from testifying). *Giles*, 554 U.S. at 360-61; Mil. R. Evid. 804(b)(6).[10] We agree with our sister court that these two elements must be satisfied by a preponderance of the evidence. *United States v. Marchesano*, 67 M.J. 535, 544 (A. Ct. Crim. App. 2008) (citing *United States v. Gray*, 405 F.3d 227, 241 (4th Cir. 2005)); *see also Giles*, 554 U.S. at 379 (Souter, J., concurring). And with respect to the second prong regarding the party's intent, the conduct rendering the declarant unavailable need not have been motivated *solely* by a desire to prevent the declarant from testifying as a witness, so long as it was *a* motivation. *See United States v. Jackson*, 706 F.3d 264, 269 (4th Cir. 2013) (finding that to allow defendants with multiple motives for their actions to murder, intimidate, or injure potential witnesses and then claim their confrontation right would impermissibly erode the rationale behind the exception).

Here, the military judge cited the two-prong test in his ruling and correctly found that "[i]n order to demonstrate the design to prevent [the witness from testifying], it is not necessary that criminal charges be pending."[11] However, drawing from a pre-*Giles* case from the First Circuit, he then adopted the principle that for the wrongdoer to have the requisite intent, "it

---

*son*, 706 F.3d 264, 268 (4th Cir. 2013) (stating "the *Giles* decision . . . merely clarified existing precedent and affirmed that the intent requirement of Rule 804(b)(6) is sufficient to prevent any violation of the Confrontation Clause); *United States v. Marchesano*, 67 M.J. 535, 542 (A. Ct. Crim. App. 2008) (finding Mil. R. Evid. 804(b)(6) identical to its civilian counterpart and observing that while *Crawford* "functionally separated the constitutional and evidentiary hearsay concepts, the [Supreme Court]'s analysis of the Confrontation Clause forfeiture by wrongdoing and Fed. R. Evid. 804(b)(6) indicated the two are related").

[9] The military judge identified the same, and analyzed both the hearsay and Confrontation Clause exceptions in the same way.

[10] The evidentiary rule is essentially the same two-part test contained in *Giles* and provides that "[a] statement offered against a party that wrongfully caused or acquiesced in wrongfully causing the declarant's unavailability as a witness, and did so intending that result" is not excluded on hearsay grounds if the declarant is unavailable as a witness. Mil. R. Evid. 804(b)(6).

[11] App. Ex. LXXIX at 6.

must be 'reasonably foreseeable that any investigation [would] culminate in the bringing of charges.'"[12] Using this legal standard, he determined that under the circumstances of this case it was not reasonably foreseeable either that Appellee would be investigated regarding Mrs. Becker's prior allegations or that Appellee might face charges based on those allegations, such that Mrs. Becker might be required to testify against him.[13] From this, the military judge concluded the Government had failed to demonstrate that Appellee acted on the day of Mrs. Becker's death "in order to prevent Mrs. Becker's testimony."[14]

We find error in the military judge's use of the "reasonable foreseeability" standard in this manner, which strays too far from the intent requirement announced under *Giles*. Determining whether it is reasonably foreseeable that an investigation will culminate in the bringing of charges puts an *objective* gloss on an inquiry that is fundamentally directed at the *subjective* intent of the party who "wrongfully caused or acquiesced in the declarant's unavailability as a witness." Mil. R. Evid. 804(b)(6).

The standard is thus underinclusive in comparison with a more straightforward application of *Giles*. One can imagine, for example, a scenario where an accused wrongfully acts with at least some subjective intention or design of making a potential witness unavailable (satisfying *Giles*), yet does so at a time when the prospect that *charges* will be brought is not reasonably foreseeable—e.g., a domestic violence situation where a child-custody or other civil proceeding looms after an investigation—though the accused unreasonably believes the contrary. Applying a "reasonable foreseeability" standard would thus allow the unreasonable accused to avoid application of the rule to his conduct, even when his actions are subjectively intended or designed *exclusively* to silence a witness.[15] *Giles* stands for a broader forfeiture-by-wrongdoing exception.

---

[12] App. Ex. LXXIX at 6 (quoting *United States v. Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996)).

[13] App. Ex. LXXIX at 7.

[14] *Id.*

[15] We liken this difference to the difference between the defenses of honest versus reasonable mistake of fact:

> If the ignorance or mistake goes to an element requiring . . . specific intent . . . the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or

In fact, *Giles* expressly contemplates the application of forfeiture by wrongdoing to the silencing of witnesses before they report crimes at all, particularly in domestic violence situations.[16] As the Court explained:

> Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. *Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine.* Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

*Giles*, 554 U.S. at 377 (emphasis added); *see also id.* at 379 (Souter, J., concurring) (suggesting that the exception's common law roots leave no reason to doubt that "the element of intent would normally be satisfied by the intent inferred on the part of the domestic abuser in the classic abusive relationship, which is meant to isolate the victim from outside help . . ."). *Giles* thus envisions unconfronted, testimonial statements potentially being rendered admissible where a prior abusive relationship suggests that a wrongful act is performed with an intent to prevent the witness not only from testifying at some formal proceeding, but also from reporting abuse, cooperating with law enforcement, or resorting to outside help, irrespective of whether criminal charges are reasonably foreseeable at the time of the conduct. In other words, under *Giles*, the doctrine applies equally to wrongdoing to prevent testimony

---

> mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances.

R.C.M. 916(j)(1). In essence, *Giles* requires only specific intent—that the intent or design to cause the witness' unavailability exist in the mind of the accused—not that such intent be reached or measurable in any objectively reasonable way.

[16] *Giles* itself involved a domestic violence situation where the defendant shot and killed his ex-girlfriend, claiming self-defense. Prosecutors sought to introduce statements the decedent made to police three weeks before the shooting, alleging the defendant had physically assaulted her over a suspected affair and threatened to kill her if he ever found her cheating on him. *Giles*, 554 U.S. at 356-57.

and to wrongdoing to prevent testimonial statements, such as formal reporting to law enforcement. *See, e.g., Hammon v. Indiana*, 547 U.S. 813 (2006) (companion case to *Davis v. Washington*, 547 U.S. 813 (2006), wherein affidavit of wife to police officer responding to reported domestic disturbance was held to be testimonial).

Accordingly, we find that the military judge erred in applying the "reasonable foreseeability" standard to evaluate intent or design, which unnecessarily narrows the forfeiture-by-wrongdoing test articulated by *Giles* and Mil. R. Evid. 804(b)(6).

**D. Relief**

As the military judge's determination of the inadmissibility of certain prior statements by Mrs. Becker was based on a legal principle we now hold to be incorrect, we find his ruling was an abuse of discretion. We determine the appropriate remedy for the error is to remand the case for additional proceedings consistent with this opinion. *United States v. Kosek*, 41 M.J. 60, 64 (C.M.A. 1994).

## III. CONCLUSION

The Government's appeal is **GRANTED**. The military judge's ruling is **VACATED** and the record of trial is returned to the Judge Advocate General for remand to the convening authority and delivery to the military judge for further consideration in light of this opinion. The military judge may, *sua sponte* or at the request of either party, permit additional evidence or argument on the question of whether the preponderance of the evidence supports application of the forfeiture-by-wrongdoing exception to the Confrontation Clause and Military Rule of Evidence 804(b)(6) in light of *Giles*.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court