UNITED STATES, Appellee

v.

Daniel R. DEWRELL, Master Sergeant
U.S. Air Force

No. 00-0203

Crim. App. No. 33085

United States Court of Appeals for the Armed Forces

Argued November 8, 2000

Decided June 13, 2001

CRAWFORD, C.J., delivered the opinion of the Court, in which
SULLIVAN, GIERKE, EFFRON, and BAKER, JJ., joined.

<u>Counsel</u>

For Appellant:  Gayleen McCallum (argued); Lieutenant Colonel
James R. Wise, Lieutenant Colonel Timothy W. Murphy, and Captain
Natasha V. Wrobel (on brief); Major Maria A. Fried.


For Appellee:  Captain Peter J. Camp (argued); Colonel
Anthony P. Dattilo and Lieutenant Colonel Ronald A. Rodgers
(on brief); Major Lance B. Sigmon.

Military Judge:  James A. Young, III

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members of committing an indecent act on A, a female less than 16 years of age, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. Appellant was acquitted of raping J, a female less than 16 years of age. While reducing the forfeitures, the convening authority approved the sentence of a dishonorable discharge, 7 years' confinement, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 52 MJ 601 (1999). We granted review of the following issues:

> I. WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE 6TH AMENDMENT OF THE CONSTITUTION.
>
> II. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY REFUSING TO ALLOW ANY DEFENSE VOIR DIRE QUESTIONS CONCERNING THE MEMBERS' PRIOR INVOLVEMENT IN ANY CHILD ABUSE CASES AND POSSIBLE PRECONCEIVED NOTIONS REGARDING USE OF FORCE AND FABRICATION WHEN ALLEGATIONS OF SEXUAL MISCONDUCT INVOLVE TEEN AND PRETEEN AGE GIRLS.
>
> III. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN UPHOLDING THE MILITARY JUDGE'S ERRONEOUS ADMISSION OF UNCHARGED OTHER SEXUAL MISCONDUCT UNDER MIL.R.EVID. 404(b), 413, AND 414.

For the reasons contained herein, we affirm the decision of the court below.

I. STATEMENT OF THE FACTS

Appellant is a 38-year-old, divorced Master Sergeant with almost 19½ years of active service.  At the time of the offense, he was assigned to Supreme Headquarters, Allied Powers, Europe (SHAPE) in Belgium.  He became a friend of Army Specialist S, who was also assigned to Forces command at SHAPE.  Eventually, they began seeing each other and developed an intimate relationship.  Specialist S had a 10-year-old daughter, A. Appellant, Specialist S, and A frequently did things together. On one occasion in September or October 1995, Specialist S and A spent the night at appellant's residence.  A slept in the bedroom where appellant's daughter from a previous marriage slept when she came to visit him.  Sometime during the night, appellant went into the bedroom in which A was sleeping.  He placed his hands under her shirt and fondled her breasts.  He took her hands and placed them on his penis and moved them up and down.  Several months later, A told her mother what appellant had done.  Specialist S reported the assault to the Air Force Office of Special Investigations (OSI).

While the OSI was investigating the sexual assault upon A, it received information that appellant may have assaulted a babysitter, J, nearly 10 years earlier, during the time he lived in Midwest City, Oklahoma.  J stated that she had a sexual relationship with appellant, consisting of heavy petting and

oral sex.  She also claimed that appellant placed her hand on his penis and masturbated him.  When informed by the OSI that these indecent acts could not be prosecuted because of the statute of limitations, J stated that appellant also engaged in sexual intercourse with her sometime between February 1 and April 30, 1988.  She was 15 at the time.  As a result, appellant was charged with raping J.

At trial, the prosecution also called Army Specialist C. Specialist C was one of appellant's neighbors in Midwest City.  She testified that appellant sexually assaulted her on two occasions.  Once while he was working in his garage, he pulled his penis out of his shorts and put her hand on it and made her masturbate him.  On another occasion, she went to appellant's home to borrow a cup of sugar.  He took her into the bathroom and made her masturbate him, and rubbed her vagina with his hands.  These incidents were also barred from prosecution by the statute of limitations.

## II. DISCUSSION

> A.  WHETHER APPELLANT WAS DENIED
> EFFECTIVE ASSISTANCE OF COUNSEL
> GUARANTEED BY THE 6TH AMENDMENT OF THE
> CONSTITUTION.

To establish a claim of ineffectiveness, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not

4

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Williams v. Taylor, 529 U.S. 362, 390 (2000). In satisfying this burden, the "defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Appellant must establish that the acts identified by him "were outside the wide range of professionally competent assistance." Burger v. Kemp, 483 U.S. 776, 795 (1987), quoting Strickland, supra at 690. That is, counsel's performance was unreasonable "under prevailing professional norms ... considering all the circumstances." Strickland, supra at 688.

"Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "[C]ounsel is strongly presumed" to have given "adequate assistance." Id. at 690. The Strickland Court warned: "It is all too tempting ... to second-guess" a lawyer's performance, and appellate courts should try to "eliminate the distorting effects of hindsight." Id. at 689. Acts or omissions that fall within a broad range of reasonable approaches do not constitute a deficiency. The Court in Strickland held that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690.

The defendant must also demonstrate that the deficient performance prejudiced the defense. The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." Id. at 687.

In his first asserted issue, appellant claims that defense counsel failed to attack the credibility of the government witnesses. Appellant suggests that his counsel did not vigorously attack the victim, A, regarding a story she previously made up about a kidnapping, nor did defense counsel press A on a false statement to a friend that appellant threatened to kill her. To the contrary, the record of trial shows that defense counsel did question A about these items, and her responses showed that she was impressionable, and that maybe some of her stories were at least partially fabricated. Further claims by appellant as to the advanced sexual knowledge or curiosity on the part of A are unsubstantiated.

Appellant also claims that A's mother's testimony could have been contradicted. However, the only person that was in a position to challenge the mother's statement that she and appellant had only been intimate on one occasion was appellant himself. Neither at trial nor during the clemency process did he contradict A's mother.

As for Specialist C's testimony, defense counsel argued that her statements were inconsistent and amounted to uncharged, prejudicial misconduct.  The military judge disagreed and allowed Specialist C to testify, but limited her testimony.

The court below ordered defense counsel to submit affidavits answering a few questions, including why there was not a more rigorous cross-examination of A.  Civilian defense counsel (CDC) responded that he was concerned that a clumsy or vicious cross-examination of A would be devastating to his client, based on her videotaped deposition, as well as CDC's many years in criminal defense work.

As to all of the Government's witnesses, including A, CDC's affidavit explains that despite the defense's investigation, no evidence surfaced that would create even an inference that the witnesses were lying or had any motivation to lie.  The record clearly shows that the defense acted to minimize damaging testimony.

Appellant further contends that his defense counsel did not do enough to limit the spillover effects of the rape testimony of J.  However, the spillover instruction given by the military judge was adequate and, presumably, was followed by the members. See United States v. Holt, 33 MJ 400, 408 (CMA 1991).

Appellant also claims that defense counsel did not inform the members about the precise consequences of a punitive

7

discharge. Yet the record establishes that defense counsel informed the members a punitive discharge would "deprive him of everything that he has worked for and everything that he has contributed; everything that he is or thought he was." Based on the nature of appellant's felony conviction, the evidence presented during sentencing, the military judge's instructions, and argument of counsel, we are convinced that the officer members had sufficient information to understand the ramifications associated with awarding appellant a punitive discharge.

Appellant argues that defense counsel failed to present a case on his behalf during findings by not allowing him to testify and by refusing to put forth a "good soldier" defense. Appellant avers that he discussed the matter of testifying with his attorney, and that they planned to make the final decision after seeing how the case progressed. However, according to appellant, his attorney rested the defense case immediately after the Government rested without further discussion with appellant.

Defense counsel stated in his affidavit that his client was fully informed of his right to testify and chose to accept his counsel's strong recommendation that he should not take the stand. This was reiterated in military defense counsel's (MDC) affidavit. MDC stated that appellant was advised he had the

final decision on testifying, and he agreed that he would not testify.

Appellant argues that his counsel failed to present a "good soldier" defense during the case-in-chief. Appellant had over 19 years of active service and worked at SHAPE Headquarters. Upon motion, he presented affidavits to the court below from Colonel Clark P. Wigley, Lieutenant Colonel Leonard F. Benson, and Master Sergeant (Ret) George L. Davis. All three of the affiants worked with appellant at SHAPE, and all three vouched for his competence, professionalism, and integrity. Both officers indicated that they would have gladly testified for appellant at his trial. However, CDC did not believe that a "good soldier" defense would be very persuasive in this type of case. CDC was also concerned that character witnesses would open the door for uncharged misconduct.[1] Defense counsel had the benefit and knowledge of the pretrial investigation, including OSI reports, medical reports, and other discoverable material. He stated that appellant understood his analysis and accepted it. Deciding to forgo live witnesses in order to avoid potentially damaging evidence being brought in under cross-examination does not amount to incompetence.

---

[1] Right to Counsel: En Banc Eleventh Circuit Denies Habeas to Federal Prisoner Sentenced to Death, 67 BNA CRIM. L. REP. at 658 (Aug. 9, 2000) ("A reasonable lawyer … could have decided that presentation of mitigation evidence would be counterproductive because it would open the door to potentially harmful cross-examination and nullifying rebuttal.").

We need not order a hearing pursuant to United States v. Ginn, 47 MJ 236, 248 (1997), since these matters may be resolved based on the "appellate filings and the record."  47 MJ at 248.

All parties agree that appellant's counsel advised him against testifying.  CDC states that appellant wanted to testify, and that it was only after a heated discussion that appellant agreed to remain silent.  He states that when the prosecution rested, he leaned over to appellant and appellant "once again, confirmed that he would be taking our advice and that he would be remaining silent."  MDC states that after the Government rested its case, the defense "took a moment to concur one last time that we were not putting on any further evidence."  Appellant asserts that CDC stood up immediately after the Government rested and announced that the defense also rested.

The record does not indicate whether a brief pause and conference took place among appellant and his two counsel before the defense rested.  The record does reflect, however, that there was a 2-hour break after both sides rested, followed by a session under Article 39(a), UCMJ, 10 USC § 839(a), on instructions, during which there was ample opportunity for appellant to express his desire to testify.  While appellant may have continued to entertain the idea of testifying in spite of his counsel's advice, there is no indication that he told his counsel he rejected their advice. Appellant made no complaint

about his defense counsel in his post-trial submission to the convening authority. Appellant's failure to speak up at or after trial belies his assertion that his desire to testify was improperly cut off by his counsel. We conclude that "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability" of appellant's assertions. See Ginn, 47 MJ at 248.

As to the abridgement of appellant's right to testify, we agree with the court below. "[T]his barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing.... Some greater particularity is necessary -- and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify -- to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim...." 52 MJ at 614, quoting Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); see also United States v. Boyd, 86 F.3d 719, 722-23 (7th Cir. 1996).

Appellant claims similar error during the sentencing portion of the trial. Yet, CDC indicated that he discussed the sentencing strategy with appellant, and this seems probable from the record, which states:

> CIV DC: Yes, Your Honor, we have discussed [with] Master Sergeant Dewrell his rights to present evidence and to make a sworn or unsworn

> statement through counsel. And, in doing so, we have reviewed the Defense Exhibits that we have marked as Defense Exhibit D for identification, which we will be offering to the military judge. We have explained that the prosecution, of course, will be offering the enlisted personnel records of the accused, reflecting his entire service career. And, we have determined that for tactical reasons we will not be presenting any other evidence beyond that, to include the accused exercising his right to remain silent.

We hold that CDC's and MDC's tactics were well within their discretion. "We do not look at the success of a criminal defense attorney's trial theory, but rather whether counsel made an objectively reasonable choice in strategy from the alternatives available at the time." United States v. Hughes, 48 MJ 700, 718 (A.F. Ct. Crim. App. 1998), citing United States v. Ingham, 42 MJ 218 (1995).

Appellant has not met his burden of showing error on the part of defense counsel. As the first prong of Strickland was not met, we hold that the court below correctly determined that appellant was not denied effective assistance of counsel as guaranteed by the Sixth Amendment. We also hold that it did so in compliance with this Court's decision in Ginn.

> B. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY REFUSING TO ALLOW ANY DEFENSE VOIR DIRE QUESTIONS CONCERNING THE MEMBERS' PRIOR INVOLVEMENT IN ANY CHILD ABUSE CASES AND POSSIBLE PRECONCEIVED NOTIONS REGARDING USE OF FORCE AND FABRICATION WHEN ALLEGATIONS OF SEXUAL MISCONDUCT INVOLVE TEEN AND PRETEEN AGE GIRLS

The standard of review on this issue is an abuse of discretion. United States v. Belflower, 50 MJ 306, 309 (1999); United States v. Jefferson, 44 MJ 312, 317 (1996).

The military judge in this case did not allow either counsel to conduct group voir dire. Appellant argues that the military judge abused his discretion by refusing to allow any defense voir dire questions concerning the members' prior involvement in any child abuse cases and possible preconceived notions regarding use of force and fabrication when allegations of sexual misconduct involve teen and preteen age girls.

Prior to trial, the military judge sent a letter to counsel advising them to submit voir dire questions to him at least 7 days prior to trial since he would question the members. While both the defense and the Government submitted questions pursuant to the military judge's instructions, both sides stated their objection to this procedure and their desire to question the members personally. However, the military judge denied both requests. Neither the UCMJ nor the Manual for Courts-Martial, United States (2000 ed.), gives the defense the right to individually question the members. Jefferson, supra at 317-19; RCM 912(d), Manual, supra.[2]

---

[2] The current version of this rule is identical to the one in effect at the time of appellant's court-martial.

13

After the military judge questioned the members, defense counsel specifically asked the military judge to ask them:

* * *

       4. Is there any member of the panel who has a close friend, neighbor or relative, (to include spouse), who works in the field of law enforcement, teaching, medicine, psychology, psychiatry, or social work services?;

* * *

       8. Is there any member of the panel who believes that teenage girls, solely because of their age, are not mentally capable of manifesting lack of consent to sexual advances?;

       9. Is there any member of the panel who believes that teenage girls, because of their age, believe that they are required to acquiesce to sexual advances of an adult because that person is an adult?; and

       10. Is there any member of the panel who believes that preteen age girls would not fabricate allegations of sexual misconduct?

Trial defense counsel stated that question four was designed to determine "whether or not any member of the panel is close enough with someone who would be necessarily involved in child abuse cases and who might have knowledge that would come to bear during the course of the discussions in the jury room," thereby affecting his/her deliberation in the case. Defense counsel stated he would use this information to "intelligently exercise our peremptory challenge." Defense counsel commented

14

that the purpose of questions eight and nine was to determine whether any member believed that a teenager is not capable of manifesting a lack of consent to sexual approaches.  He noted that in some cases, court members believed this.  Defense counsel urged the military judge to ask question ten because "there are many jury members out there who believe that a pre-teenage girl would never fabricate an allegation of sexual misconduct."  The military judge did not address defense counsel's concern but simply stated, "I believe I have adequately covered these areas in my questions."

   The military judge's questions properly tested for a fair and impartial panel and allowed counsel to intelligently exercise challenges.  He asked about members' family and close friends; he asked whether any member served as a "family advocacy team member or who works on some type of committee such as that"; he asked whether "anyone on the panel . . . believes that any particular person, whether they are an adult or a minor, simply because of their status, would automatically be telling the truth or not telling the truth"; and he asked whether any member had any experience in legal or law enforcement matters.  We hold that the questions asked by the military judge were clearly adequate to cover the statutory qualification of the members.  Thus, there was no abuse of discretion by the military judge.

> C. WHETHER THE AIR FORCE COURT OF CRIMINAL
> APPEALS ERRED TO THE SUBSTANTIAL PREJUDICE
> OF APPELLANT IN UPHOLDING THE MILITARY
> JUDGE'S ERRONEOUS ADMISSION OF UNCHARGED
> OTHER SEXUAL MISCONDUCT UNDER MIL.R.EVID.
> 404(b), 413, AND 414.

Lastly, appellant contends that the court below erred in upholding the military judge's admission of uncharged other sexual misconduct under Mil.R.Evid. 404(b), 413, and 414, Manual, supra.[3] We review the military judge's ruling on the admissibility of evidence under an abuse of discretion standard. See United States v. Acton, 38 MJ 330, 332 (CMA 1993).

At the beginning of the trial, defense counsel made a motion in limine to preclude the testimony of Specialist C as impermissible under Mil.R.Evid. 404(b). Although appellant was not charged with any offenses relating to Specialist C, the prosecution wanted her to testify that appellant had her masturbate him on a couple of occasions between 1987 and 1989 when she was between 10 and 12 years of age. The military judge ruled that the portion of her testimony relating to the masturbation was admissible. He stated:

> I find that the acts of having young girls, between
> the ages of 10 and 15 - - grabbing their hands,
> putting their hands on his penis, and masturbating
> him – that evidence is of such similar nature that

---

[3] Mil.R.Evid. 413 and 414 did not exist at the time of appellant's court-martial. However, Fed.R.Evid. 413 and 414 applied, by virtue of Mil.R.Evid. 1102, and they are virtually the same as Mil.R.Evid. 413 and 414. See United States v. Wright, 53 MJ 476, 480 n.4 (2000).

> I believe it is admissible under both 404(b) and Military Rule of Evidence 414. Now, in my balancing test under Military Rule of Evidence 403, I decided that the full scope of the testimony of Specialist [C] will not be admitted. In other words, the statements concerning trapping her in the bathroom and the other acts don't go to the acts that we are talking about, especially with regard to [A]. Again, part of my reasoning here is that the prejudicial effect of that type of evidence would outweigh the probative value – substantially outweigh the probative value. However, on the masturbating, I think that is very probative and by limiting it I don't think the prejudicial effect substantially outweighs the probative value.

Although the military judge's determination in this case was made prior to our decision in United States v. Wright, 53 MJ 476 (2000), we note that the list of factors in Wright is neither exclusive nor exhaustive. The military judge's careful and reasoned analysis on the record satisfied the constitutional requirement that evidence offered under Rule 413 be subjected to a thorough balancing test pursuant to Mil.R.Evid. 403. United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998); see also United States v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998)(Although the trial court is not required to make detailed findings of fact under Rule 403, it is important that the court "fully evaluate the proffered Rule 413 evidence and make a clear record of the reasoning behind its findings.").

Following our decision in Wright, we hold that the military judge properly admitted the contested testimony. The threshold

17

findings were met under Rule 413(a)[4], the evidence was found to be relevant to the immediate charges under Mil.R.Evid. 401 and 402, and the military judge clearly found that the probative value of specific portions of the testimony outweighed any prejudicial effect, as required under Mil.R.Evid. 403. We review a military judge's evidentiary rulings for an abuse of discretion. However, when the judge does not articulate the balancing analysis on the record, we give the evidentiary ruling less deference than we do where, as in this case, the balancing analysis is fully articulated on the record. United States v. Manns, 54 MJ 164, 166 (2000).

Additionally, the military judge instructed the members as follows:

> Each offense must stand on its own and you must keep the evidence of each offense separate. The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. As a general rule, proof of one offense carries with it no inference that the accused is guilty of any other offense. However, you may consider any similarities in the testimony of Ms. [P, A,] and Specialist [C] concerning masturbation with regard to the Specification of Charge II [rape].

(Emphasis added.) As the members acquitted appellant of the rape charge, this Court finds no reason to doubt that the members followed the instructions given them.

---

[4] As Rules 413 and 414 are essentially the same in substance, the analysis for proper admission of evidence under either should be the same.

## III. DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.