# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant TOMMIE E. CRUMEDY**
**United States Army, Appellant**

ARMY 20140128

Headquarters, U.S. Army Medical Department Center and School
G. Bret Batdorff, Military Judge
Colonel Jeffrey McKitrick, Staff Judge Advocate

For Appellant: Captain Ryan Yoder, JA; Daniel Conway, Esquire (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A. G. Courie III, JA; Major Steven J. Collins, JA; Captain Tara E. O'Brien, JA (on brief).

4 August 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

On appeal, appellant asserts his trial defense counsel was ineffective for failing to interview and call four witnesses. After reviewing the record of trial as well as appellant's post-trial submissions, we determine appellant is not entitled to relief.

A general court-martial comprised of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of maltreatment, one specification of false official statement, and one specification of wrongful sexual contact, in violation of Articles 93, 107, and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 893, 907, 920 (2012) [hereinafter UCMJ]. The court-martial sentenced appellant to a bad-conduct discharge. The convening authority approved the sentence as adjudged.

This case was referred to us under Article 66(b). Appellant assigns two errors, only the issue of ineffective assistance merits discussion.[1]

## BACKGROUND

Appellant was convicted of sexually harassing (i.e. maltreating) and sexually abusing a female subordinate soldier.[2] In short, appellant was found guilty of sexually abusing Private First Class (PFC) SF by grabbing her buttocks while they were alone in a tent during a training exercise. Appellant was convicted of maltreating that same soldier by repeatedly saying to her "I love you" and commenting on how pretty she looked in uniform. Additionally, appellant was convicted of a separate specification of maltreatment for ordering her to carry his personal gear, and ordering her to do push-ups when she refused. Appellant's statements made during the course of an administrative investigation formed the basis of the violation of the false official statement offense.

## LAW

We review appellant's ineffective assistance of counsel claims de novo. See *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). To prevail, Appellant "must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). An attorney is deficient when his representation falls "below an objective standard of reasonableness." *Id*. (*citing Strickland v. Washington*, 466 U.S. 668 (1984)).

The Court of Appeals for the Armed Forces (CAAF) recently summarized the standard for assessing a claim of ineffective assistance as follows:

---

[1] Appellant's first assignment of error alleges that the evidence was legally and factually insufficient. After reviewing the record we disagree.

Additionally, appellant made two submissions pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.A.A.F. 1982). The first submission, however, was handwritten and unintelligible. In an order dated 24 June 2016, we directed counsel to summarize and type the issues appellant intended to raise. *See United States v. Gunter*, 34 M.J. 181 (C.A.A.F. 1992). On 2 August 2016, we received a typed response that we were able to fully consider. After reviewing all of appellant's *Grostefon* submissions, we determine they do not merit relief. We note that in his *Grostefon* matters, appellant repeats and elaborates on his claim that his trial defense counsel was ineffective. We will limit our discussion however to those matters raised by appellant in the assigned error and supported by sworn affidavits. *See United States v. Gunderman*, 67 M.J. 683, 684 (Army Ct. Crim. App. 2009).

[2] Appellant was acquitted of similar charges against a second female subordinate.

> We do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine "whether counsel made an objectively reasonable choice in strategy" from the available alternatives. *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (quoting *United States v. Hughes*, 48 M.J. 700, 718 (A.F. Ct. Crim. App. 1998)). Similarly, we must remain mindful that counsel have "wide latitude . . . in making tactical decisions." [*Cullen v. Pinholster*, 563 U.S. 170, 195 (2011)] (quoting *Strickland*, 466 U.S. at 689). Thus, our scrutiny of a trial defense counsel's performance is "highly deferential," and we make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.
>
> An appellant is prejudiced by counsel's deficient performance where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). With regards to a counsel's pretrial preparation, the CAAF has stated that:

> Trial defense counsel have a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strategic choices made by counsel after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. In considering whether an investigation was thorough, we address not what is prudent or appropriate, but only what is constitutionally compelled. The Supreme Court has rejected the notion that the same type and breadth of investigation will be required in every case.

*Id*. at 379-80 (internal citations and quotations omitted).

## DISCUSSION

Appellant asserts he is entitled to a new trial because of his defense counsel's failure to interview and call several witnesses. In his brief the witnesses are described as "exculpatory."

3

We granted appellant's motion to attach two affidavits to the appellate record. The first affidavit is from appellant. In it, appellant swears he told his defense counsel that he wanted Sergeant (SGT) Nicholas Doyley to be a witness on the merits, and that he would provide "completely exculpatory" testimony. Appellant also names three other witnesses whom he wanted to testify and further claims his attorney never contacted them. The second affidavit was from SGT Doyley, one of the witnesses requested by appellant.

At the request of the government we ordered the production of an affidavit from appellant's trial defense counsel. Upon additional consideration, however, we have determined we can resolve appellant's claims without reference to the defense counsel's affidavit.[3]

### A. Sergeant Doyley

Appellant's brief argues that SGT Doyley "provided an affidavit attesting SGT Crumedy could not have committed the Article 93 allegations as described [by] the alleged victim because SGT Crumedy was in a different vehicle than the alleged victim." SGT Doyley's affidavit explains that on the date in question, appellant was the "Tank Commander" or "TC" of his vehicle during a long convoy and therefore could not have committed the offenses.

Notably, the brief does not cite the record to explain where this contradicts the victim's testimony. Indeed, such citation is not possible.

That is because PFC SF testified that she rode in a *separate* vehicle than appellant, and that the harassment happened *after* the convoy had returned to Joint Base Lewis-McChord. She testified that she traveled in a different chalk and that appellant arrived "a few hours after us, it was one or two in the morning before they got back and we had to be there for a close out formation." Thus, SGT Doyley establishes an alibi for a period of time where no misconduct was alleged to have occurred.

---

[3] The trial defense counsel's affidavit asserts that he did contact the disputed witnesses. Ordinarily, this would present conflicting affidavits requiring a hearing under *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (C.M.A. 1967). *See United States v. Ginn*, 47 M.J. 236, 243 (C.A.A.F. 1997). We determined that we need not consider the trial defense counsel's affidavit because even taking appellant and SGT Doyley's affidavits as unrebutted, appellant is not entitled to relief. Were we to consider the affidavit, we note that it includes email correspondence where he tells appellant that some of the witnesses are not saying what appellant had led him to believe they would say. He further gives detailed tactical reasons for not calling each witness.

4

The government alleged it was only after all vehicles arrived at Fort Lewis that appellant maltreated PFC SF. During *this* time period, SGT Doyley states he was not with appellant because he had to fuel and wash the vehicle. In other words, SGT Doyley's affidavit is consistent with PFC SF's testimony, rather than contradictory.

We are unable to square appellant's assertion in his brief that SGT Doyley would have been "completely exculpatory" and that the "victim's testimony would have been destroyed by the alibi defense" with the actual facts in the record.

Next appellant's brief argues that "Sergeant Doyley also had *first hand* knowledge as to the events surrounding the wrongful sexual contact" and that such testimony would have been "completely exculpatory" to the sexual contact offense. (Emphasis added). This explanation, however, misstates SGT Doyley's affidavit.

The victim testified that while they were both on a training exercise at Camp Rilea, appellant came up behind her when she was alone in a tent and cupped her buttocks. Sergeant Doyley's affidavit states his knowledge of this event as follows: "As far the tent situation in Camp Rilea, Oregon, I did not hear of or witness an assault by anyone."

Whatever else it may be,[4] SGT Doyley does not provide "first hand" testimony that is "completely exculpatory."

Finally, appellant claims that SGT Doyley would discredit the victim because he could have testified that *someone* would have seen PFC SF exiting the tent after the assault. At trial, PFC SF testified that she "stormed" out of the tent after appellant grabbed her. She later clarified on direct that she "walked" out. She was then cross-examined on previous statements where she said she "ran" out of the tent. The defense called a witness who testified that he never heard or saw PFC SF exit the tent upset and that her demeanor was pleasant during the entire training exercise.

*B. Other "Exculpatory" Witnesses*

Appellant's brief asserts the trial defense counsel failed to "locate, request, and call material and exculpatory witnesses." One of those witnesses was SGT Doyley, discussed above. Other than SGT Doyley, the brief does not name who the other witnesses are, or explain what "exculpatory" testimony they would offer. Appellant's brief leaves us with a naked assertion that the uncalled "witnesses" (plural) are exculpatory.

While we can deduce the identity of the three other witnesses by cross-referencing the brief with the affidavit submitted by appellant, we are still unable to

---

[4] *See* Army Reg. 27-26, Rules of Professional Conduct for Lawyers, Apx. B. R. 3.3(a)(1)(1 May 1992).

determine why appellant asserts these witnesses are exculpatory.[5] Appellant's affidavit lists three other witnesses that he claims his counsel never interviewed, but does not offer any explanation as what they had to do with his case.

## C. *Analysis*

When alleging ineffective assistance of counsel, the burden is on *appellant* to demonstrate both that counsel was ineffective, and that he was prejudiced by the result. *United States v. Gutierrez*, 66 M.J. 329, 332 (C.A.A.F. 2008) ("The burden is on [the convicted soldier] to show a reasonable probability, one sufficient to undermine the confidence in the outcome, that but for the defense counsel's ineffectiveness . . . he would not been convicted.").

Thus, even assuming that counsel was ineffective in not calling SGT Doyley and the other unnamed witnesses, the question we must decide is whether appellant has shown that their testimony would have mattered. Put differently, is there is a reasonable probability that had they testified appellant would have been acquitted?

Appellant has not met his burden. Sergeant Doyley provides an alibi during a time when no one asserted an offense was committed, and provides "first hand" testimony that he did not see anything one way or the other. It is unclear how the remaining witnesses are even connected to the case in any material manner.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge CAMPANELLA and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] A careful reader will note appellant asserts his trial lawyer was deficient for failing to provide the trial court with the testimony of these three witnesses. On appeal, *this court* is also not provided with the substance of their testimony.