# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class GERALD R. CARTER, JR.**
**United States Army, Appellant**

ARMY 20160770

Headquarters, Fort Drum
S. Charles Neill, Military Judge
Colonel Peter R. Hayden, Staff Judge Advocate

For Appellant:  Captain Oluwaseye Awoniyi, JA; Zachary Spilman, Esquire (on brief, reply brief, and brief on specified issue).

For Appellee:  Lieutenant Colonel Eric K. Stafford, JA; Captain Jeremy Watford, JA (on brief); Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA; Captain Allison L. Rowley, JA (on brief on specified issue).

28 March 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

Appellant argues his trial defense team was ineffective.  Appellant's argument involves mistaken identity, fraternal betrayal, technological mystery, and a healthy dose of bad luck.  The argument is ambitious and engaging, it is also wrong.

A panel with enlisted representation sitting as a general court-martial convicted appellant, contrary to his pleas, of five specifications of sexual abuse of a child, one specification of extortion, and two specifications of possession of child pornography, in violation of Articles 120b, 127, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920b, 927, and 934 [UCMJ].  The panel sentenced appellant to a dishonorable discharge and eight years of confinement.  The convening authority

approved the findings and sentence as adjudged. Appellant's case is now before us for review under Article 66, UCMJ.

Appellant has raised eight assignments of error. We discuss two. First, we address appellant's claim of ineffective assistance of counsel. Second, we briefly address the appropriateness of appellant's sentence. After careful consideration, we conclude no other assignments of error merit discussion and none merit relief.

## BACKGROUND

Private First Class Gerald R. Carter, Jr. led a double life. While married, he used the "Kik" messenger application on his smartphone to carry on sexually explicit conversations with underage girls. Perhaps because he was married, or perhaps because his lewd exchanges with girls fourteen-to-sixteen years of age were plainly criminal, appellant conducted his illicit activities under the *nom de guerre* "Julio Carter."

Appellant engaged in multiple lewd exchanges with underage girls. These exchanges included both sexually explicit language and sexually explicit images of appellant nude. Appellant also received sexually explicit images of an underage girl. Appellant extorted the girl into providing him additional nude images of herself by threatening to tell her parents about the images she had already provided him if she did not provide more.

When appellant's misconduct was uncovered, he claimed to be the victim of mistaken identity. Appellant told his defense counsel that it was not he who engaged in depraved conduct with underage girls, but instead his brother, Gerard Carter.[1] As far as the record shows, nobody but appellant has ever seen Gerard

---

[1] On brief, the government posits that "Gerard Carter" was not who he claimed to be. Appellant's Questionnaire for National Security Positions (SF 86) is included in the pretrial allied documents. On the form, appellant listed the names, addresses, and birthdates of four half-brothers and no full-brothers. None of the half-brothers were named "Gerard," and none had a birthdate consistent with that of "Gerard" based on his Article 32 testimony. The SF 86, however, is not properly before this court. As appellant has raised a claim of ineffective assistance of counsel, both he and the government may move to attach matters to the record to support or rebut appellant's allegation. In fact, appellant has submitted an affidavit under penalty of perjury explicitly claiming to have a brother named "Gerard Carter" and explicitly claiming his SF 86 is incorrect. We need not decide whether appellant lied on his sworn affidavit to this court or lied on his SF 86. Despite both the government and appellant referring to the SF 86, neither party has moved to attach it as an appellate

(continued . . .)

2

Carter, but appellant's defense counsel telephonically interviewed him and called him as a telephonic witness at appellant's Article 32 preliminary hearing. Gerard claimed that he had visited appellant during June of 2015, the timeframe of most of appellant's misconduct. Gerard claimed that he stayed at appellant's residence near Fort Drum, New York, and appellant let him use appellant's smartphone while appellant was temporarily at Fort Polk, Louisiana. Gerard testified that while appellant was in Louisiana, Gerard used appellant's phone in New York to engage in the conduct with underage girls of which appellant was eventually convicted.

After providing testimony at appellant's Article 32 hearing, Gerard Carter only once responded to government attempts to contact him. He hung-up on a government paralegal who attempted to arrange for his travel as a witness in appellant's court-martial, and he ultimately terminated service of his own telephone number. Government attempts to serve Gerard Carter with a subpoena were returned as "undeliverable." As such, the government could not produce Gerard Carter at appellant's court-martial.

Appellant was provided an expert digital forensic examiner (DFE) as a member of his defense team. As part of appellant's defense team, the DFE reviewed the digital evidence in appellant's case. In short, the DFE concluded Gerard Carter was lying at the Article 32 hearing. The DFE concluded metadata of photographs taken by appellant demonstrated appellant was in possession of the smartphone in question when it was used for the criminal communications. The DFE concluded it was "a matter of fact, and not one of opinion" that appellant was in possession of the smartphone used in appellant's crimes at all relevant times. The DFE concluded appellant "was being untruthful" with his defense counsel. The DFE determined that appellant "had taken pictures in and around Fort Polk, LA with the very camera phone [he] had claimed was left with his brother in and around the Fort Drum, NY area during the time of the charged offenses."

Appellant's lead defense counsel informed appellant that he could not ethically offer the prior testimony of Gerard Carter as evidence in appellant's court-martial because it was clearly perjured. Appellant then proposed an alternate explanation to his defense counsel that involved the theory that he shared certain

(. . . continued)
exhibit. Thus, we do not consider the SF 86 in reaching our decision. *See United States v. Cade*, 75 M.J. 923, 928 (Army Ct. Crim. App. 2016). The Clerk of Court is directed to forward a copy of this opinion to appellant's commander for consideration of what, if any, action is appropriate regarding the discrepancy between appellant's submission to this court and his submission for his security clearance.

information between a smartphone in his possession near Fort Polk and a smartphone in Gerard's possession near Fort Drum. Appellant's defense counsel dutifully requested input from his DFE on appellant's newly-spun tale. Appellant's DFE reported appellant's alternate explanation was also incompatible with the metadata recovered from appellant's phone.

Appellant's defense counsel explained to appellant that if appellant wanted to present his alternate tale to the panel, he would have to do so through his own narrative-format testimony. Ultimately, appellant chose not to testify, and his defense counsel did not attempt to admit any of Gerard Carter's telephonic testimony from the Article 32 hearing.

Consistent with appellant's own DFE's analysis, the government presented evidence that metadata on appellant's phone conclusively linked the phone to appellant at all relevant times. The Government further presented evidence that appellant's phone connected to cellular towers near Fort Polk, Louisiana, at times when appellant was stationed at Fort Polk. The content of appellant's phone revealed numerous sexually explicit communications with underage girls. Some of appellant's communications with underage girls led to his receipt of sexually explicit images of an underage girl. Appellant used those sexually explicit images to extort the girl for yet more sexually explicit images.[2]

---

[2] Prior to filing his brief on appeal, appellant filed a "Motion for Leave to File an Ex Parte Motion under Seal." Appellant's proposed motion would have requested this court to subpoena records from a third-party civilian entity. Appellant averred the proposed subpoena would return information that "might be exculpatory, inculpatory, or neither." We denied appellant's motion for several reasons. One reason bears mention here. We—as opposed to the courts-martial whose cases we review—do not have the authority to issue subpoenas to third-party civilians. Appellant cited *United States v. Lewis*, 42 M.J. 1, 5 (C.A.A.F. 1995), as authority to the contrary. We did not, however, read *Lewis* to authorize us to issue appellant's proposed subpoena. We reached this conclusion for at least three reasons. First, the language in *Lewis* on which appellant relies is dicta, stating "if necessary, the court could have issued a subpoena to enforce its order." *Id.* Hypothetical courses of action are quintessential dicta beyond the strict holding of a judicial opinion. Second, *Lewis* involved compelling affidavits from defense counsel regarding their actions in the case under review. *Lewis* did not contemplate issuing a subpoena to third-party civilians previously uninvolved with the case under review. Third, after *Lewis*, our superior court held another service court of criminal appeals exceeded its statutory authority by ordering the production of and relying upon "an extra-record, after-the-fact affidavit" from a military commander. *United States v. Watson*, 69 M.J. 415, 420 (C.A.A.F. 2011). *See also Clinton v. Goldsmith*, 526 U.S. 529 (1999)

(continued . . .)

**LAW AND DISCUSSION**

Appellant argues his counsel were ineffective by not admitting Gerard Carter's Article 32 testimony at his court-martial. Alternatively, in his reply brief, appellant argues his counsel were ineffective by failing to investigate his story sufficiently to avoid "pinning appellant's defense on" his claim that Gerard committed the crimes of which appellant was eventually convicted.

Appellant also argues that his sentence to a dishonorable discharge and eight years of confinement is inappropriately severe because appellant's convictions are for what appellant characterizes as "non-contact offenses with girls who freely exchanged explicit messages [with appellant]."

We disagree with both of appellant's arguments. Our analysis begins with appellant's claim of ineffective assistance of counsel, then briefly moves to the appropriateness of appellant's sentence.

*A. Appellant's Claim of Ineffective Assistance of Counsel*

We review claims that an appellant received ineffective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, (1984)).

Under the first *Strickland* prong, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. In assessing counsel's performance, "we do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives." *Akbar*, 74 M.J. at 379 (citing *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)) (internal quotation marks omitted). Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Strategic choices made after thorough investigation of law and facts

---

(. . . continued)
(narrowly construing a military appellate court's jurisdiction to issue extraordinary writs). Even if we had authority to issue the subpoena appellant requested, we would not have done so given its ex parte and speculative nature.

relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, appellant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Green*, 68 M.J. at 362 (citing *Strickland*, 466 U.S. at 698).

We conclude appellant's argument fails both prongs of *Strickland* analysis. Appellant's defense counsel's decision not to present the Article 32 testimony of Gerard Carter was reasonable. Indeed, it was the objectively correct decision. Further, even if the Article 32 testimony had been offered at appellant's court-martial, it would not have affected the outcome because it was subject to clear factual refutation.

We reach our conclusion for three reasons: First, a defense counsel has an ethical duty not to knowingly present false evidence to a court-martial. Second, appellant's defense counsel had more than a sufficient basis to conclude Gerard Carter lied in his testimony at appellant's Article 32 hearing. Third, Gerard's lies were susceptible to factual rebuttal by evidence presented by the government.

*1. The Subornation of Perjury*

A lawyer may not knowingly "offer evidence the lawyer *knows* to be false." Dep't of Army Pam. 27-26, Legal Services: Rules of Professional Conduct for Lawyers [DA Pam. 27-26], para. 3.3(a)(4) (1 May 1992) (emphasis added). "A lawyer *may* refuse to offer evidence that the lawyer *reasonably believes* is false." DA Pam. 27-26, para 3.3(c) (emphasis added).[3] In other words, if a lawyer knows evidence is false, the lawyer is prohibited from offering it. If a lawyer does not know evidence is false, but reasonably believes it is false, the lawyer may refuse to offer such evidence without violating the standards of professional conduct.

While an accused has a right to testify and a right to present a defense, an accused has no right to commit perjury. *Nix v. Whiteside*, 475 U.S. 157, 173 (1986).

---

[3] This was the version of DA Pam. 27-26 in effect at the time of appellant's court-martial. The Rules of Professional Conduct have since been updated and the updated version reaches the same result on this point. *See* Dep't of Army Pam. 27-26, Legal Services: Rules of Professional Conduct for Lawyers, para. 3.3(a)(3) (28 June 2018).

Neither does an accused have a right to suborn perjury or present false evidence. Consequently, it is not ineffective for an attorney to refuse to present false evidence on behalf of a client. *See id.* at 175.[4]

A claim of ineffective assistance based on defense counsel's refusal to offer false evidence also fails the second prong of *Strickland*. *See id.* An accused "has no entitlement to the luck of a lawless decisionmaker." *Id.* (quoting *Strickland*, 446 U.S. at 695). Similarly, an accused has no entitlement to a verdict based on the lawless presentation of false evidence.

### 2. The Bounds of Credulity

Appellant's defense counsel had ample basis to conclude Gerard Carter's testimony at the Article 32 hearing was materially false. As explained in the lead defense counsel's affidavit responding to appellant's claims of ineffective assistance, the defense team's own DFE confirmed that Gerard's testimony could not have been true. If this were merely the DFE's opinion, perhaps appellant's counsel would have had the discretion to choose whether or not to offer Gerard's testimony under the permissive rule that a lawyer *may* refuse to offer evidence that the lawyer *reasonably believes* is false. The DFE, however, informed appellant's counsel that the impossibility of Gerard's testimony based on the digital evidence was "a matter of fact and not one of opinion." As such, appellant's counsel assessed he was bound by the mandatory rule that a lawyer *may not* knowingly offer evidence the lawyer *knows* to be false.

Appellant's defense counsel had more than enough information to reasonably conclude Gerard's story was false. Gerard's Article 32 testimony strained the bounds of credulity to begin with, but we understand that defense counsel may ethically accept improbable—though nevertheless possible—explanations at face-value. Once appellant's DFE demonstrated Gerard's story could not possibly be true, appellant's counsel was well-within the bounds of lawful, ethical, and effective representation to refuse to take any further part in presenting false evidence on appellant's behalf.

Defense counsel was also well-within the bounds of lawful, ethical, and effective representation not to present evidence on appellant's alternative explanation involving the use of two smartphones with the same applications. Appellant's DFE explained that appellant's alternate theory was also inconsistent with the digital evidence. Further, the circumstances under which appellant

---

[4] Perjury and subornation of perjury are crimes in their own right. UCMJ, arts. 131, 134; *Manual for Courts-Martial, United States*, pt. IV ¶ 98 (2016 ed.).

proffered this new theory—in the middle of trial and in response to being caught in a lie—plainly demonstrated appellant's alternate theory was fabricated in response to his counsel's refusal to present Gerard's false testimony.

Appellant has also claimed, in his reply brief, that his defense counsel were ineffective by not investigating appellant's version of events thoroughly enough to sooner realize that appellant's story was false. Put differently, appellant claims his defense counsel breached a duty to appellant to discover appellant had been lying to them and prevent appellant's lies from undermining appellant's defense. We think not.

Appellant's counsel took reasonable steps to investigate appellant's initial story by telephonically interviewing Gerard Carter, who supported appellant's claims. In hindsight, it is clear appellant and Gerard were lying. We do not, however, evaluate the reasonableness of defense counsel's choices based on hindsight. *Strickland*, 466 U.S. at 689. Instead, we evaluate whether counsel's conduct was reasonable in light of what counsel knew at the time. *Id.* A defense counsel is neither a mind-reader nor a magician. Defense counsel cannot force a client to tell the truth, even though doing so would be in the client's best interest. Neither can a defense counsel divine that a client has colluded with others to deceive the defense counsel. An appellant may not profit on appeal by successfully misleading his own counsel before trial. If appellant's defense was undermined by appellant's lies to his own lawyers, appellant has only one person to blame: himself. *See generally Pooler v. Florida Department of Corrections*, 702 F.3d 1252, 1271 (11th Cir. 2012) (surveying cases where defense counsel were not ineffective for failing to discover their clients' misrepresentations and material omissions after reasonable investigation in the form of family interviews).

Far from being ineffective, appellant's defense counsel operated as well as could reasonably be asked of a defense team struggling with a client who persisted in misleading them at every turn. Defense counsel made objectively reasonable choices in response to the evidence they were presented. Appellant's defense counsel exercised reasonable professional judgment within the bounds of their ethical responsibilities, and made reasonable strategic choices in response to the twists and turns of falsehood appellant threw their way.[5]

---

[5] Appellant relies heavily upon the affidavit of his assistant trial defense counsel, which appellant filed contemporaneously with his opening brief to this court. In her affidavit to this court, appellant's assistant defense counsel appeared oblivious to the fact that ineffective assistance of counsel is a question of the representation provided by the entire defense team. *See United States v. McConnell*, 55 M.J. 479, 481 (citing *United States v. Boone*, 42 M.J. 308, 313 (1995)). Little more need be

(continued . . .)

### 3. The Surfeit of Evidence

Even if appellant's defense counsel had presented Gerard Carter's Article 32 testimony,[6] there is no reasonable probability the outcome of appellant's trial would be different. The government presented definitive evidence that appellant possessed the smartphone used to commit his crimes at all relevant times, including when appellant was in Louisiana. Had appellant's counsel offered Gerard's prior testimony, it would have been overwhelmed in an avalanche of digital forensic evidence to the contrary.

The metadata associated with appellant's phone conclusively refutes any claim appellant left his phone with Gerard Carter in New York. Further piling on the evidence against appellant, the government demonstrated that appellant's phone connected to a cellular tower near Fort Polk, Louisiana, at times when appellant was at Fort Polk but Gerard claimed he possessed appellant's phone in New York. The digital evidence is extensive and consistent with only one conclusion: appellant used his smartphone to commit the offenses of which he was convicted. Both Gerard's testimony at the Article 32 hearing, and appellant's alternative theory regarding the sharing of data between two phones are conclusively disproved by a surfeit of evidence to the contrary.

### B. Sentence Appropriateness

Appellant argues his sentence is inappropriately severe. We disagree. Appellant, a married adult and a soldier in the United States Army, trolled social media for vulnerable underage girls he could sexually exploit.

Appellant claims that his crimes constitute "non-contact offenses with girls who freely exchanged explicit messages [with appellant]." Appellant's contention is misplaced both conceptually and factually.

---

(. . . continued)
said about her apparent misconception, as the lead defense counsel ably explained that the assistant defense counsel was not present for discussions with the DFE regarding the factual impossibility of Gerard's story and appellant's alternative theory. It suffices to observe that the effectiveness of counsel is assessed on a team basis, and the totality of the representation appellant received met this standard.

[6] We do not decide the question of whether the Rules of Evidence permit the presentation of prior telephonic testimony of a person whose identity cannot be independently verified.

Whether appellant's graphic sexual interactions with children were "freely exchanged" misses the point that these "free exchanges" were with *children*, who appellant knew were children. Nevertheless, appellant engaged children in graphic sexual dialogue, sent sexually explicit images to children, and received sexually explicit images of children from children.

When appellant received sexually explicit images from one girl, he used those images to extort further sexual images from her. Far from being a "free exchange," appellant's conduct was literally extortionate. Appellant ruthlessly preyed on children to fulfill his own sexual desires. We find nothing inappropriate in appellant's sentence, and have no hesitation in affirming it.

## CONCLUSION

Appellant's claim of ineffective assistance collapses under the weight of the evidence against him. Appellant's defense team acted ethically and effectively despite appellant's efforts to lead them down the path of falsehood. Appellant's sentence is appropriate to his crimes. We have considered the remainder of appellant's assignments of error and find they merit neither discussion nor relief.

The findings of guilty and sentence are AFFIRMED.

Judge FEBBO and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court